*In re* MARRIAGE OF ILENE LEON, Petitioner-Appellee, and HAROLD LEON, Respondent-Appellant.

Second District   No. 78-510

Opinion filed January 21, 1980.

Joel S. Ostrow, of Ostrow and Schiff, of Chicago, for appellant.

Owen L. Doss, of Bentley, DuCanto, Silvestri and Doss, of Chicago, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Harold Leon (the husband) appeals from a portion of the judgment of dissolution of marriage entered on July 10, 1978, on the petition of Ilene Leon (the wife). He contends that the award of attorneys' fees, the form and amount of maintenance and the award of the marital home to the wife were against the manifest weight of the evidence.

The parties were married in 1958. In the judgment of dissolution the husband was ordered to pay $200 per month for support of the three children of the marriage as well as their college and medical expenses. The husband was ordered to pay the wife "maintenance in gross" in the amount of $288,000, payable at the rate of $2,000 per month for a 12-year period. It was further provided that the maintenance should not be defeasible upon the death or remarriage of the wife or the death of the husband; that it be taxable to the wife and deductible by the husband and that it not be dischargeable in bankruptcy. The wife was awarded the marital home which she valued at approximately $130,000 and valued by the husband at $155,000, subject to a mortgage of $40,000. The husband was awarded all interest in his insurance brokerage business, including a deferred compensation account and a Keogh fund. The husband was also ordered to pay the wife's attorneys $18,000.

It appears from the evidence that the husband's gross income for 1976 was approximately $85,000 with an estimated 1977 gross income of about $90,000. In his business the husband sells both life and casualty insurance from which he receives an initial commission and residuals. The husband testified that the marital home was purchased in 1972 for $85,000, that he had estimated its present worth at $155,000 and that it had a mortgage of $40,000. The property was held in joint tenancy. The previous home of the parties was purchased in 1962 for $32,500. The down payment for the first home was an $11,550 gift from the husband's mother to the husband; the second home was purchased with a $40,000 down payment comprised of $30,000 in equity from the first home and $10,000 which the husband inherited from his mother in 1968. All mortgage

payments were made from his earnings. The $10,000 from the husband's mother was part of a $40,000 inheritance; the balance of which he said was kept in banks or securities, with $20,000 being spent on furnishing the new home and an additional $5,000 spent on improvements. The wife conceded that she did not contribute to the purchase of the home from her personal funds. Both parties agreed that the mortgage payments were made from the joint account in which the husband deposited funds.

The wife testified that she was 44 years old, had one child in college and two at home in high school. The two children at home were twins who would be ready for college in September of 1979. She earned just over $5,000 in 1977. She estimated her monthly expenses to be $2500 per month. She has a bachelor's degree in education from the University of Minnesota.

■■ We first consider the contention of the husband that the home of the parties should have been found to be nonmarital property. He contends that it was acquired in exchange for property which he acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent within the provisions of section 503(a)(1), (2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(1), (2).) We do not agree. While the down payment of the parties' first home came from a nonmarital source, the mortgage payments were made with marital funds which were co-mingled in a joint account. Further, the money which was used to pay the mortgage on both the first and second houses came from the husband's earnings as an insurance broker which were deposited in a joint account. Under section 503(b) the present home acquired after the marriage is presumed to be marital property and this presumption has not been overcome. (See *In re Marriage of Smith* (1979), 77 Ill. App. 3d 858; *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 517.) We conclude that the trial court correctly determined that the home was marital property and that portion of the judgment is affirmed.

Whether the court correctly awarded the marital home to the wife as well as awarding her maintenance in gross must then be reviewed on the whole record. As we have currently noted in *In re Marriage of Amato* (1980), 80 Ill. App. 3d 395, under the statutory scheme of the Illinois Marriage and Dissolution of Marriage Act, issues of maintenance and child support relate directly to the final property disposition, which must be first reached. See also Ill. Rev. Stat. 1977, ch. 40, pars. 503, 504.

Initially, we encounter the fact that although the court found the husband's business to be marital property there is no finding as to the value of the insurance business. Further, the record of the trial proceedings contains no testimony as to its value. Although the books and

records of the business were before the court and the accountant for the firm also testified, he was not asked his opinion as to the value. The first reference to valuation appears in the memorandum filed by the wife's attorney at the close of proof in which as a matter of argument he applied the formula:

"5 times pre-tax net earnings                    $500,000

Accounts Receivable (premium advances)       40,000

                                         $540,000"

The memo in response filed by the husband's attorneys also points out in argument that the conclusion as to value has no basis in the evidence and was not presented at trial for cross-examination or rebuttal. We agree that there is no proper evidence of the valuation of the insurance business and that the record therefore does not contain an evidentiary basis upon which we may review the award of maintenance. For this reason the cause must be remanded for a new trial.

In proceeding on remand the trial court is directed to take evidence establishing the value of the insurance business; parenthetically, we note that the weight of authority in other jurisdictions is that the interest of a spouse in a law or medical partnership including the "good will" of such business has been held to be marital property. (See *Stern v. Stern* (1975), 66 N.J. 340, 331 A.2d 257; *In re Marriage of Goger* (1976), 27 Or. App. 729, 557 P.2d 46; *In re Marriage of Lukens* (1976), 16 Wash. App. 481, 558 P.2d 279; *Moss v. Moss* (1976), 190 Colo. 491, 549 P.2d 404; *In re Marriage of Kelley* (1979), 40 Or. App. 605, 595 P.2d 1294. See also Annot., 52 A.L.R.3d 1344 (1973); Annot., 74 A.L.R.3d 621 (1976).) The insurance proprietorship of the husband appears to be similar to that of a sole practitioner in a professional business and it would appear that the reasoning of these cases is applicable to the husband's business.

In effect the wife urges this court to take judicial notice of the valuation of an insurance brokerage business based upon its past gross annual income, but because of the various factors involved this would clearly be inappropriate. In dealing with the components of a law practice, for example, one court has noted that consideration must be given to:

"(a) fixed assets, which we deem to include cash, furniture, equipment, supplies and law library; (b) other assets, including properly aged accounts receivable, costs advanced with due regard for their collectability; work in progress partially completed but not billed as a receivable, and work completed but not billed; (c) goodwill of the practitioner in his law business as a going concern; and (d) liabilities of the practitioner related to his business."

*In re Marriage of Lopez* (1974), 38 Cal. App. 3d 93, 110, 113 Cal. Rptr. 58, 69.

We reject the wife's alternative argument that the court did not rely on a valuation of the husband's business in awarding her the $2000 a month as maintenance in gross but based the award solely on her need. As previously noted the Act contemplates that the property division will be the primary means of support and that maintenance will be awarded only if the property division is inadequate to provide for a spouse's need. See Ill. Rev. Stat. 1977, ch. 40, par. 504(a)(1).

● 2 For these reasons the award of maintenance in gross is reversed.

The trial court is directed on remand to make a division of both the home of the parties and the insurance business asset in light of the factors set forth in section 503(c) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)). If the court awards the wife an interest in husband's business as part of the property division, it can in its discretion allow husband to compensate the wife for her interest in installment payments.

The award of attorneys' fees is also in substantial dispute in this appeal. The husband argues that the award of attorneys' fees in the amount of $18,000 is excessive. The award was based on the testimony of the attorney for the wife that he had worked some 100 hours and that his customary charges were $100 per hour for office time and $125 per hour for court time, that he did not keep records of all of his time and that the case was complex and unusual. This resulted in a fee of $180 per hour.

There is no dispute as to the factors which should be considered in assessing attorneys' fees:

> "In addition to the relative financial positions of the parties, the amount of fees to be allowed in a divorce proceeding depends on a consideration of the skill and standing of the attorneys employed, the nature of the controversy, and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter, especially from a family law standpoint; the degree of responsibility involved in the management of the case; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client." *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 458-59.

■■ When these factors are applied to the record before us we must conclude that the fees awarded are grossly excessive. Even considering the great disparity in income between the parties, the excellent credentials of the wife's attorney and the fact that the case involved an early test of the provisions of the new Illinois Marriage and Dissolution of Marriage Act, the record does not support the award made. (See *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 460; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 586; *Green v. Green* (1976), 41 Ill.

App. 3d 154, 170; *Tippet v. Tippet* (1978), 65 Ill. App. 3d 1018, 1021.) Based on the wife's attorney's own calculation (30 hours at $125 equals $3,750; 70 hours at $100 equals $7,000) the total fee would be $10,750. In our view, fees higher than those produced by the evidence of the customary hourly rate of the wife's attorney are not warranted and we therefore reduce the attorneys' fees to the amount of $10,750. In so doing we rule only on the circumstances of this case and do not intend the rate approved to be a standard in all cases.

In summary, we affirm the finding that the residence of the parties is marital property, reverse the award of maintenance in gross and the disposition of the marital property, and remand the cause with directions to the trial court to hear evidence on the reasonable value of the husband's business including its goodwill component; and to divide the assets in light of the factors set forth in section 503(c) of the Illinois Marriage and Dissolution of Marriage Act. The order awarding the wife's attorneys $18,000 in attorneys' fees is modified to the amount of $10,750.

Affirmed in part, reversed in part, modified in part, and remanded with directions.

WOODWARD and NASH, JJ., concur.