*In re* MARRIAGE OF GEORGE CUISANCE, Petitioner-Appellee and Cross-Appellant, and WANDA CUISANCE, Respondent-Appellant and Cross-Appellee.

First District (5th Division)   No. 82—1288

Opinion filed June 17, 1983.

552

John P. Rinella and Douglas Polsky, both of Chicago, for appellant.

Steven R. Lake and Alan J. Toback, both of Lake, Rosenberg & Associates, Ltd., of Chicago, for appellee.

JUSTICE MEJDA delivered the opinion of the court:

Respondent Wanda Cuisance appeals from those portions of the judgment of dissolution of marriage pertaining to the award to her of marital property and maintenance. Petitioner George Cuisance cross-appeals from the modification of the judgment order awarding respondent additional property and from the portion of the judgment requiring him to pay respondent's attorney fees and costs of $17,299.55.

The issues presented are whether: (1) the award of maintenance set by the trial court was inadequate; (2) the division of marital property was improper; (3) the award of additional property was error; and (4) the award of attorney fees was improper and excessive. We

reverse and remand.

Wanda and George Cuisance were married on July 3, 1967. No children were born to the marriage. In December 1978 George filed his petition for dissolution of marriage. An *ex parte* judgment for dissolution was entered in April 1979 which was later vacated in June 1980. In June 1980 Wanda filed her counterpetition for dissolution of marriage. In October 1980 after a hearing, the trial court entered an order finding grounds to dissolve the marriage and reserving the remaining issues for later determination. Thereafter, a trial relating to division of property and the award of maintenance commenced in February 1981.

At the trial, the following relevant evidence was adduced.

During the marriage the parties acquired the following assets: a Chicago condominium; 10 unimproved parcels of land located in Pensacola, Florida; approximately 1,625 shares of stock in various companies, valued at $58,675, and which generate annual dividends of about $400 to $500; a restaurant business known as Le Bordeaux Restaurant, located at 3 West Madison Street, Chicago; certain checking and savings accounts in Chicago and abroad; a condominium located in Vesoul, France; a house and farm located at Neurey, France; and various items of personal property, household goods, furniture and furnishings.

George Cuisance testified that in 1976 he purchased 200 shares representing 50% of the stock of the restaurant business, Le Bordeaux, from his former partner for $125,000 and that he now owns 100% of the restaurant.

Al Richman, accountant for Le Bordeaux and George's personal accountant, testified that George bought out the former co-owner of the restaurant for about $104,000; that George gave the co-owner a note for $64,000 payable within three years, a note for $15,000 payable on a monthly basis until the expiration of the restaurant's lease in 1985, and $25,000 in cash. George was forced to buy out the co-owner's shares because the latter was moving from Chicago and would not be able to help George operate the restaurant.

In 1976 the restaurant's gross receipts were $510,647, and in 1980 they were $645,853. Richman stated that considering assets and liabilities, the net worth of the restaurant on December 30, 1980, was $63,285. The liquidation value of the restaurant would be up to 30 cents on the dollar. A new location for the restaurant was being sought due to the expiration of the lease in 1985.

In 1977 George drew compensation from the restaurant in the amount of $72,250; in 1978, $80,754; in 1979, $75,984; and in 1980,

$58,734. In 1980 he left $20,186.49 in the corporation for certain income tax advantages. In addition, the business pays for George's life and health insurance.

Marshall Frishman, an accountant, testified on behalf of Wanda over petitioner's objections. He reviewed the restaurant's books and records and concluded that notwithstanding the lease, the fair market value of the restaurant was in excess of $200,000. This figure took into consideration the restaurant's good will. He could not, however, place a value on the business in the event of its relocation.

The parties' Chicago condominium located at 1440 North Lake Shore Drive was purchased in 1972 for $57,000. The mortgage balance at trial was $30,143.35. The parties stipulated to an exterior real estate appraisal value of the condominium of $174,000. Wanda testified that interior spaces of the condominium are in a bad state of repair and that $20,000 would be needed to make necessary repairs. She valued the premises in its present condition at between $120,000 to $130,000.

George testified that he also owns a condominium, a house and a 40-acre farm in France. He stated that he inherited the condominium upon his mother's death in June 1979 and that title to all these properties are in his name. No testimony was given establishing the manner of acquisition of the farm property. George testified that his uncle Lucien Henriot resides in the stone house located on the farm and that he has sent money to this uncle for remodeling expenses. He also maintained that his uncle pays the taxes on the farm. Wanda testified that George had told her that the French condominium was his property and that he had paid for it. No evidence of value of any of the French properties was adduced at trial.

Ten unimproved lots in Pensacola, Florida, were purchased during the marriage for $10,000 to $12,000. George has never seen these lots and it was his understanding that they tend to be flooded when it rains. He testified that these lots are worth less today than when they were purchased. No other evidence as to their value was adduced.

The parties' household goods, furniture and furnishings were valued by George at around $25,000 to $30,000.

Wanda testified that she has no independent means of income and no employment. She claimed average monthly expenses of $2,802. Of this amount, $942 is attributable to maintaining the condominium residence.

When Wanda immigrated to this country 20 years ago, she possessed no English language skills. She still has language difficulties although she is a high school graduate. During the marriage Wanda

was employed in the restaurant. Her duties there included work in the checkroom, answering the telephone, hosting and other tasks. In 1980 she earned $6,108 net pay at the restaurant. She has had no specific job or vocational training and she possesses no meaningful job skills. Although she once enrolled in a nail sculpturing school, she withdrew due to nervousness. She testified that she was in good health generally but that she had a liver problem and had been nervous. Since the separation she has been unable to find gainful employment. Wanda was 35 years old in September 1980. George was 47 years old.

During the marriage Wanda enjoyed the use of numerous credit cards and accumulated an extensive wardrobe including at least four furs. The parties maintained a very comfortable lifestyle, often dining in expensive restaurants.

In 1980 George vacationed often, traveling to Canada, Europe and the Island of Martinique. According to Wanda, George had also recently traveled to Arizona, Mexico, Florida, Martinique, Canada, France and Belgium. His monthly expenses included $525 for rent for his apartment and $20 for phone and electricity.

After hearing the evidence, the trial court found that the parties' marital property consisted of the condominium, the restaurant, the lots in Florida, a number of bank accounts, and the stock. George's condominium, farm and bank account in France were found to be nonmarital property. Wanda was found to be in good health. The trial court awarded Wanda the Chicago condominium, $25,000 in cash, the contents of the condominium, and temporary rehabilitative maintenance of $1,000 per month for 18 months. George received the restaurant, a bank account, the stock, and the undeveloped Florida property.

In January 1982, after a hearing on Wanda's petition to vacate or reconsider judgment, the trial court modified the cash award to Wanda, awarding her an additional $10,000 due to the condition of the condominium. The trial court also heard testimony on Wanda's petition for attorney fees. Her attorney testified that his customary charge per court hour is $150. An office hour is $100. He had spent 52 court hours on the case, amounting to $7,800 in fees, and 124 office hours on the case, amounting to $12,450. Court costs were $274. In addition, Wanda's expert witness, Mr. Frishman, was paid $2,500 for his services. Following the testimony, the trial court found that George had a greater ability to pay than Wanda. After making certain deductions, the trial court found proven court time to be 37 hours and office time to be 124½ hours. Accordingly, Wanda was awarded

556

$17,299.55 in attorney fees and costs.

OPINION
■■ We first address Wanda's claim that the trial court erred in its award of property. Wanda argues that the trial court's failure to value both the marital and nonmarital property mandates remandment for further proceedings. Specifically, she contends that the trial court was presented with no evidence of the value of the French real properties and bank account, the Florida real properties, the three bank accounts in Chicago and the personal property in the possession of the parties. She also contends that evidence of the value of the restaurant, Le Bordeaux, was disparate and that the trial court erred in failing to enter a finding as to the value of this principal marital asset. Wanda argues that as a result of the failure to value the parties' assets, there was an insufficient basis upon which to divide them under section 503 of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1981, ch. 40, par. 503.

Initially, we note that there is no requirement under the Act that the court place a specific value on each item of property, but only that there be competent evidence of value and that the trial court's division of the property be supported by the evidence. (*In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 445 N.E.2d 811; *In re Marriage of Hyland* (1981), 95 Ill. App. 3d 31, 419 N.E.2d 662.) However, where evidence in the record as to valuation of such assets is lacking, there is no basis upon which a reviewing court can determine the propriety of the trial court's award of marital property. (*In re Marriage of Boone* (1980), 86 Ill. App. 3d 250, 408 N.E.2d 96; *In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, 399 N.E.2d 1006.) Additionally, the failure to offer evidence of the value of such assets does not necessarily waive the right to appeal on this issue. (*In re Marriage of Reib* (1983), 114 Ill. App. 3d 993; *In re Marriage of Kundit* (1982), 107 Ill. App. 3d 310, 437 N.E.2d 777; but see *In re Marriage of Smith* (1983), 114 Ill. App. 3d 47.) Moreover, under the Act the value of nonmarital assets is a factor to be considered in the division of the marital property. (*In re Marriage of Meyer* (1981), 103 Ill. App. 3d 44, 430 N.E.2d 610.) Thus, evidence of valuation of the nonmarital assets must be also shown on the record in order for a reviewing court to determine the propriety of the division of the marital property. *In re Marriage of Hapaniewski* (1982), 107 Ill. App. 3d 848, 438 N.E.2d 466.

■■ In the instant case, there is no evidence of the value of the French properties. Even accepting the trial court's determination that these are George's nonmarital assets, their value was, nonetheless, a

factor to be considered in the division of the marital property. In the absence of evidence of valuation, we do not believe that the division of the parties' marital property could have been fully determined by the trial court and, therefore, this case must be remanded for further proceedings.

We note here also that the evidence as to the nonmarital nature of these properties was unclear and inconclusive. For example, George testified that the condominium in Vesoul was originally acquired by his mother, but that title was always in his name. As to the farm and house, we cannot find any evidence on the record establishing the manner in which this property was acquired. Under section 503(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 503(b)), all property acquired after the marriage is presumed to be marital property, and the party claiming that such property is nonmarital has the burden of overcoming this presumption. (*In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 396 N.E.2d 859.) In the absence of contrary evidence, this statutory presumption will be controlling, regardless of the manner in which title is held by the spouse. (*Smith.*) Since such evidence is unclear and even lacking in the instant case with respect to the French properties, this issue must be further determined on the basis of competent evidence on remand.

Similarly, there is no evidence of the present value of the Florida properties. While the approximate purchase price of the lots in question was established, the only other evidence presented regarding their value was George's testimony that he believed they had depreciated in value and that they are prone to flooding. He admitted, however, that he had never seen the properties. The trial court should, on remand, hear competent evidence as to the present value of this asset.

With respect to Wanda's contention that the evidence did not establish the value of Le Bordeaux Restaurant, we note that the trial court did not fix the value of this asset. Two experts, however, testified offering disparate estimates of the restaurant's value. One witness estimated the net worth or book value of the business at $63,285 while the other gave the value in excess of $200,000. The latter valuation was based essentially on the price George paid to purchase all of the stock held by his former co-owner. Apparently, the trial court accepted the lower valuation.

It has been held that the market value of stock in a closely held corporation can be ascertained from the price which a willing purchaser will pay a willing seller in a voluntary transaction. (*In re Mar-*

*riage of Reib* (1983), 114 Ill. App. 3d 993; *Olsher v. Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.) Also, the value of a closely held corporation, such as Le Bordeaux, is not necessarily the book value of its assets, although book value may be of importance in determining market price. *Reib; Olsher.*

The trial court here did not fix the value of the Le Bordeaux stock, yet the record reveals that at trial there was presented evidence that George paid either $125,000 or $104,000 for 50% of the restaurant stock in 1976. Due to the inconclusive and disparate evidence adduced on the value of Le Bordeaux, a principal marital asset, there is no basis upon which to ascertain on review whether the final property distribution was justly proportioned. Accordingly, in addition to the above, the cause must be remanded for further evidentiary hearings to establish the value of this asset. See *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087.

Although we remand this case for further hearings on the issue of valuation of the assets mentioned, we find it necessary to note two recent opinions of this court which aptly express our view that all too often reversals of this kind are unnecessarily occasioned by the parties' failure to present evidence on valuation. In *In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 54, the judgment of the trial court was affirmed even though the parties presented no solid evidence of their assets. The appellate court observed that "it is the parties' obligation to present the court with sufficient evidence of the value of the property. Reviewing courts cannot continue to reverse and remand dissolution cases where the parties have had an adequate opportunity to introduce evidence but have failed to do so. Parties should not be allowed to benefit on review from their failure to introduce evidence at trial. *In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 209; see *In re Marriage of Melton* (1981), 93 Ill. App. 3d 338, 341, 417 N.E.2d 220, 223." This view was cited with approval recently in *Reib*. In *Reib*, however, the court opined that under the particular circumstances of that case it would have been a harsh, unequitable, and legally inappropriate result to affirm, on the basis of *Smith*, the trial court's judgment in the absence of sufficient credible evidence to establish the valuation of several major assets, and therefore the judgment was reversed. In the instant case there was no credible evidence presented to suggest the value of the French real properties, and only disparate evidence of the value of the restaurant business. Moreover, there was insufficient evidence presented to overcome the presumption that the French properties were the parties' marital assets. Accordingly, we believe that reversal of this cause is mandated.

■ Next, Wanda contends that the award of maintenance to her was inadequate. Under the Illinois Marriage and Dissolution of Marriage Act, issues of maintenance and child support relate directly to the final property disposition, which must be reached first. (See Ill. Rev. Stat. 1981, ch. 40, pars. 503, 504; *Reib; In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, 399 N.E.2d 1006.) Thus, where the cause is remanded with specific instructions to take evidence establishing valuation and division of the parties' various assets, it follows that the award of maintenance must too be reversed and the cause remanded to consider further a just award of maintenance. (*Reib; Leon.*) On remand, we note that the trial court should be guided by the standards enunciated in section 504 of the Act. See *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.

■ We next consider George's cross-appeal from the award of attorney fees of $17,299.55 to be paid by him to Wanda's attorney. The general rule in dissolution cases is that to justify allowance of attorney fees the party seeking the relief must show financial inability to pay and the ability of the other spouse to do so. (*Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.) Since the ability of either spouse in this context is based largely upon the valuation and just distribution of the parties' assets, in the absence of evidence of valuation we are unable to determine that the relative financial abilities of the parties has been adequately considered or determined by the trial court. Upon remand, the trial court should be guided by the general standard that any allowance should be only in such amount as will compensate for the services rendered, and must be fair and just to all parties concerned, namely the attorney to be compensated, the client, and the person required to make payment. See generally *Gasperini*; see also *Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661.

Finally, we find it unnecessary to address George's contention that the trial court's modification of the judgment awarding Wanda additional property was error since we hold that the question of the division of marital property must be further determined on remand to the trial court.

For the foregoing reasons, the judgment of the circuit court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

SULLIVAN and LORENZ, JJ., concur.