*In re* MARRIAGE OF PAUL L. STONE, Petitioner-Appellant and Cross-Appellee, and ANNET HLAVNA STONE, Respondent-Appellee and Cross-Appellant.

Fourth District   No. 4—86—0090

Opinion filed April 30, 1987.—Rehearing denied June 1, 1987.

GREEN, J., concurring in part and dissenting in part.

Michael J. McDonald, of Schwarz, Self, White, Emons & McDonald, of Jerseyville, for appellant.

Harold G. Belsheim, of Pessin, Baird, Belsheim & Wells, of Belleville, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

On December 21, 1981, Paul L. Stone filed a petition for dissolution of marriage in the circuit court of Jersey County, Illinois. On December 28, 1981, the court granted the petition, specifically reserving issues of child custody, child support, and marital property rights. On April 30, 1984, husband initiated proceedings for determination of the remaining issues. On May 30, 1984, husband and wife,

Annet Hlavna Stone, reached an agreement concerning the issues of child custody and visitation. The case proceeded to trial on the remaining issues of child support and division of property. On November 14, 1985, the court entered judgment. Following the court's denial of his motion to reconsider, husband appeals and wife cross-appeals the order of the circuit court.

The parties raise four issues for consideration on appeal: (1) valuation of the marital residence; (2) valuation and distribution of husband's interest in the law partnership; (3) division of personal property; and (4) child support. We are not persuaded by the arguments of the parties and consequently affirm the circuit court order.

## BACKGROUND

Testimony indicated that the parties married on October 14, 1967, during husband's first year in law school. Wife testified that husband brought no property into the marriage, while she initially contributed a car, furniture, and general household goods. At the time of marriage, wife was employed by a certified public accounting firm in Champaign, Illinois, earning approximately $7,200 per year. Wife testified that her salary was used to pay marital bills as well as the majority of husband's educational expenses. Husband did not incur any debts to finance his legal education. During the first three years of marriage, husband held two summer jobs, earning approximately $3,500.

There were three children born to the marriage, none of whom have yet attained adult status. Wife continued to work throughout the marriage except for short periods of time when the children were born. Throughout the marriage, all of the money earned by wife was put into a family account which was allocated by husband.

## THE MARITAL RESIDENCE

Both parties presented expert testimony regarding the value of the marital residence at the date of dissolution. At the time of the hearing, husband and three children were living in the residence. Wife was living in St. Louis. Husband presented Mr. Robert Livergood, a licensed real estate broker from Sullivan, Illinois, who testified that he had been appraising property for over 21 years. Livergood stated that he was personally familiar with the subject property and had examined all comparable sales for the relevant time frame. The closest comparable sale Livergood found was the sale of property located on the same street as the marital residence approximately one-quarter of a mile away. This particular piece of property

had been sold in 1980 to the Sullivan First National Bank Trust Department. Livergood noted that the property had sold for less than the assessed value.

Livergood further testified to his personal knowledge of real estate market trends in the Sullivan area during the years 1980 through 1985. Based upon this knowledge, in conjunction with his comparable sales analysis, Livergood opined that the fair market value of the marital residence on December 28, 1981, was $74,500. Livergood admitted to his lack of formal education, knowledge of the condition of the property in 1981, and cost of construction.

Mr. Charles McCoy, a real estate appraiser, testified on behalf of wife. McCoy stated that there were three commonly accepted methods utilized for the valuation of property of which the comparable sales approach in conjunction with the cost approach provided the most accurate valuation. McCoy stated that he had found four comparable sales, each of which he adjusted for comparative purposes. McCoy then utilized the cost approach to ascertain what it would cost to build the same property as of the date of appraisal.

McCoy valued the marital property at $82,000. The date of valuation used by McCoy was May 23, 1985. It was his belief that the 1985 valuation date would be similar to a 1981 valuation date. On cross-examination, McCoy admitted that he had never been involved in a real estate transaction in Sullivan and further, that his opinion as to the 1981 value with respect to his 1985 appraisal was "pure conjecture" based upon the market trends.

In the judgment order, the court found the value of the property on December 28, 1981, to be "one-half of the total value of both appraisals" or $78,250. The court awarded the marital residence to the husband, ordering him to pay wife one-half of the equity in the residence which was found to be $14,142. Payments were to be made in monthly installments of $200 beginning on January 1, 1986, until the entire amount was paid with no interest to accrue thereupon.

THE LAW PRACTICE

The husband's father, Paul Stone (father), a practicing attorney in Sullivan, Illinois, testified regarding the husband's participation in the law practice of Stone & Stone. The father stated that his son joined the practice in 1976, but at that time was also employed by the Moultrie County public defender's office. He further testified that his son subsequently left the public defender's office and began working with the State's Attorney's office.

In December of 1979, the husband left the State's Attorney's of-

fice and entered into an oral partnership agreement with Stone. The father testified that the oral partnership agreement provided that his son would draw a monthly salary of $3,000. Stone was to earn $4,000 a month. Any profit in excess of the salaries was to be divided equally. He stated that his son paid him nothing at the time he entered into the partnership. All of the furniture and furnishings in the law office were owned solely by Stone. The partnership, however, did purchase approximately $3,500 worth of personalty from the date of formation until the date of dissolution of marriage. The partnership continued until it was terminated in December of 1984, when husband returned to the State's Attorney's office.

On the date the partnership was formed, the law practice had accounts receivable in the amount of $116,508. On the date of the dissolution of partnership, the accounts receivable totaled $55,990.20. The accounts receivable at the date of dissolution of marriage amounted to $65,495. The father testified that the profitability of the partnership declined due to changes in probate law and the general decline of the real estate market.

Testimony indicated that during the existence of the partnership, the husband drew money in excess of his proportionate share to meet his increased family needs. The father testified that his son had overdrawn from the partnership in an amount of $32,419.80. The father, who characterized the overdraw as a loan, further testified that there had not been any repayment of this money. He claimed that as of December 31, 1981, his son had an obligation to the partnership equal to the alleged overdraw, but at the same time had no interest in the partnership, notwithstanding the representations that were made to the IRS on the partnership tax returns.

On cross-examination, the father admitted that the tax returns of Stone & Stone identified the husband as a partner in the firm since 1973. He claimed, however, that the tax returns were not an accurate reflection of the business and were filed indicating the existence of a partnership solely for tax purposes.

Both parties employed experts to value the law practice. Joel D. Elam, a certified public accountant, testified on behalf of husband. Elam identified a deficit in the husband's capital account in the amount of $14,000 based upon the purported "oral partnership agreement." Elam concluded that, had the partnership been liquidated in December 1981, the husband "would have been entitled to nothing or would have owed Paul Stone."

With respect to the goodwill of the partnership, Elam testified that if he used only the income figures of the partnership for 1980

and 1981, he would value the goodwill at $2,291. However, he stated that if he used the income figures until the date of the hearing, there was no value of goodwill given the declining profits.

On cross-examination, Elam testified that the partners had never kept "capital accounts" and that the construction of capital accounts contained in the report he presented was based solely on information supplied by the husband without regard to the partnership tax returns.

Stanley R. Smith, a business broker, testified on behalf of wife. Smith testified that in making his valuation, he considered the tax returns filed by the husband and his father, the partnership tax returns, the accounts receivable as of December 31, 1981, and his personal review of the physical assets of the partnership.

Smith testified that the fair market value of Stone & Stone as of December 31, 1981, was as follows: (1) cash, $3,327; (2) furniture (book value), $13,048; (3) receivables, $41,460 (based upon receivables cards provided by the practice); and (4) goodwill equal to $28,428 (based upon profit after expenses and consistent with the Dew, Inc., Business Journal for Evaluation of Professional Practices). According to Smith, the total value of the law practice amounted to $86,263 as of the date of dissolution of the marriage.

Smith maintained that husband's interest in the $86,263 was 46.8% ($40,371) based upon the income split identified in the partnership tax returns for 1981.

On cross-examination, Smith admitted that he did not interview the father or husband about the terms of the partnership agreement. He further assumed there was a partnership in existence from 1973 through 1980 based upon information contained in the tax returns. Smith additionally assumed that the partnership owned all of the furniture and fixtures. Smith admitted that had all of the fixtures and furniture been owned by the father, his evaluation would have been different. Smith finally conceded that he assumed that no accounts receivable were contributed by either party, which would conceivably reduce husband's interest.

The trial court found husband's interest in the partnership to be $28,406 based upon the testimony of husband, Paul Stone, Joel Elam, and Stanley Smith. The circuit court ordered the husband to pay wife one-half ($14,203) of the value of the law practice at a rate of $200 per month until the $14,203 is paid in full with no interest.

PERSONAL PROPERTY

There was extensive testimony presented regarding the personal

property of the parties. At trial, the wife presented a list of all personal property and the values assigned thereto. The court used this list in awarding the personal property. The court distributed the property, awarding the husband property valued at $12,676 and the wife property valued at $7,157. The court specifically noted that the husband was being assigned a greater proportion of the property because he had custody of the children during the school year.

There was a specific dispute with respect to the value of a number of items that the husband built from kits during the early years of marriage. The husband constructed a number of model ships and a grandfather clock. There was not, however, any expert appraisal of these items. Catalogs identifying the value of the kits purchased were introduced into evidence for some of the items. The court, noting the lack of evidence, found the value of these items to be one-half of the sum of valuations presented by the husband and the wife.

There was also dispute as to whether a piano purchased during the marriage was marital property. The wife testified that shortly after she was married, she took out a personal loan to purchase the piano. The loan was paid off solely with her own funds. The court found the piano to be marital property.

During the marriage, the couple purchased a number of train sets and equipment. The wife presented testimony of an appraiser who valued the equipment at $2,028.40, the resale value being $555. The wife claimed that the trains were purchased with marital funds by husband. The husband maintained that most of the trains were property of the children but did admit that certain pieces of equipment were marital property. The court found all of the train equipment to be marital property.

CHILD SUPPORT

Testimony adduced indicated that prior to May of 1984, wife was employed as a sales representative earning in excess of $30,000 per year. According to the husband, the wife sporadically made child-support payments pursuant to an informal agreement. In May of 1984, the wife voluntarily left her employ as a sales representative to become a State Farm Insurance agent. The wife testified that due to her training with the insurance company, she would not have any cognizable income for the next two years. She explained that employment with State Farm requires a two-year commitment during which time State Farm provides income supplements to assist the agent during the beginning stages. After two years, the agent works on a straight commission basis. She stated that she changed jobs be-

cause State Farm offered greater potential for income growth.

The wife further testified that, shortly after dissolution, December 28, 1981, she paid for the children's clothing; that she paid for the children's extracurricular education, books, and all related expenses during the time they spent with her. From January of 1981 through October of 1983, she claimed that she paid the husband in excess of $1,900 for the children's support. During 1983, when the parties attempted reconciliation, the wife contributed all of her income to the needs of the family. She stated that during the reconciliation period alone, she contributed approximately $11,000 to joint family resources.

The court, noting the wife's minimal income, stated that the wife did have a duty to contribute to the support of the children. On September 24, 1986, in an order allowing motion for amendment of judgment *nunc pro tunc*, the court found the wife financially unable to contribute to the support of the children of the marriage.

The husband and wife both appeal the valuation and distribution of the marital residence. Each maintains that the testimony presented by their expert is the only credible evidence and the trial court erred in averaging the valuation estimates.

■ As a general rule, the proper valuation date of the property being distributed subsequent to a dissolution is the date the judgment of dissolution was entered. (*In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267.) In the case at hand, the court properly utilized December 28, 1981, the date of dissolution, as the valuation date.

■ The valuation of assets in an action for dissolution is a question of fact for the trial court to determine. (*In re Marriage of Weinstein* (1984), 128 Ill. App. 3d 234, 470 N.E.2d 551.) The apportionment of property by the trial court will not be disturbed in the absence of an abuse of discretion. (*In re Marriage of McDonald* (1983), 113 Ill. App. 3d 116, 446 N.E.2d 559.) Moreover, discretion is only abused where no reasonable person would take the view of the trial court or where it appears that the outcome might have been different had an error not occurred. *In re Marriage of Weinstein* (1984), 128 Ill. App. 3d 234, 470 N.E.2d 551; *In re Marriage of McDonald* (1983), 113 Ill. App. 3d 116, 446 N.E.2d 559.

■ In order to correctly evaluate marital assets for the purposes of property division, the trial court must have competent evidence of value. (*In re Marriage of Malters* (1985), 133 Ill. App. 3d 168, 478 N.E.2d 1068.) Any conflicts in testimony concerning the valuation of assets in an action for dissolution are matters to be resolved by the

trier of fact. (*In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 466 N.E.2d 925.) Where the trial court's evaluation of the marital residence is within the range testified to by real estate appraisers, such valuation will not be disturbed. *In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 466 N.E.2d 925; *In re Marriage of Evans* (1980), 85 Ill. App. 3d 260, 406 N.E.2d 916.

■ Both the husband and wife presented expert testimony regarding the value of the marital residence as of the date of dissolution. The trial court recognized the expertise of the testimony presented on both sides. Armed with this evidence, the trial court valued the property by giving equal weight to the testimony of each expert. The valuation of the trial court was well within its discretion and was amply supported by the expert evidence presented. There was no abuse of discretion.

■ The wife additionally claims that the court erred in not awarding her interest on the equity payments. The allowance of interest lies within the sound discretion of the trial judge. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12.) Upon review, the determination of whether to allow interest to accrue will not be set aside absent an abuse of discretion. It was well within the trial judge's discretion to order payments without accrual of interest.

The court deemed the husband's interest in Stone & Stone as marital property and valued the partnership as follows:

| | |
|---|---:|
| Cash | $ 3,327 |
| Furniture and Fixtures | 2,881 |
| Receivables | 41,460 |
| Good Will | 28,428 |
| TOTAL | $76,096 |

The trial court found that there was no evidence presented that prior to the dissolution, December 1981, the accounts receivable were to be credited to the father. The $2,881 value given the furniture was based only upon the depreciated value of furniture and fixtures purchased in 1980 and 1981.

The trial court found the husband's percentage ownership to be 43.9%, which the court applied, and further reduced the husband's ownership $5,000 due to the father's greater number of years' practice, local activities, and offices (43.9% of $76,096 - $5,000 = $28,406 divided by 2 = $14,203 (wife's interest)).

The husband maintains that his interest in the law practice should have been valued at zero or a negative amount in light of the decline of the accounts receivable and his overdraw from partnership

funds. Additionally, he asserts that goodwill of a law practice is not an asset subject to valuation.

■ The Illinois Marriage and Dissolution of Marriage Act (Act) provides for an equitable distribution of all "marital property" upon dissolution of marriage. (See Ill. Rev. Stat. 1985, ch. 40, par. 503.) The Act creates a rebuttable presumption that all property acquired after marriage is "marital property." (*Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 216, 446 N.E.2d 499, 502.) The business interest of a spouse acquired subsequent to marriage constitutes "marital property" subject to equitable distribution upon dissolution. *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 403 N.E.2d 730; *In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 421.

The trial court's distribution of marital property will not be set aside absent a clear abuse of discretion. (*In re Marriage of Mullins* (1984), 121 Ill. App. 3d 86, 88-89, 458 N.E.2d 1360, 1362.) The value of a spouse's interest in a business is to be determined from evidence reflecting its value at the time of dissolution. *In re Marriage of Rubinstein* (1986), 145 Ill. App. 3d 31, 495 N.E.2d 659.

■ The testimony in the case at hand clearly established that the husband's interest in the partnership was acquired during marriage. It was further undisputed that the wife had supported her husband and family throughout his professional education. In this context, the interest in the partnership of Stone & Stone was marital property.

A number of courts have adopted a method for valuation of a partnership or professional practice which includes consideration of:

    (a) Fixed assets which include cash, furniture, equipment, supplies and library;

    (b) Other assets, including properly aged accounts receivable, costs advanced with due regard for their collectibility; work in progress partially completed but not billed as a receivable, and where completed but not billed;

    (c) Goodwill of the practitioner in his business as a going concern; and

    (d) Liabilities of the practitioner related to his business.

*In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, 386, 399 N.E.2d 1006, 1009, citing *In re Marriage of Lopez* (1974), 38 Cal. App. 3d 93, 110, 113 Cal. Rptr. 58, 69. See also *In re Marriage of Rubinstein* (1986), 145 Ill. App. 3d 31, 495 N.E.2d 659 (valuation of medical corporation); *In re Marriage of Davis* (1985), 131 Ill. App. 3d 1065, 476 N.E.2d 1137 (valuation of corporate law firm); *In re Marriage of Wilson* (1982), 110 Ill. App. 3d 809, 443 N.E.2d 31 (valua-

tion of timber business partnership); *In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 421 (valuation of professional dental practice).

■ The wife's expert valued the interest in the partnership using the method of valuation adopted in *Leon.* The expert valued the fixed assets, accounts receivable and other collectibles, goodwill of the business, and the liabilities of the partnership. The court's recognition of this valuation was adequately supported by proper evidence.

In *Rubinstein,* the court noted that the weight of authority in other jurisdictions is that the interest of a spouse in a law or medical partnership should include the value of the goodwill of the business. (*In re Marriage of Rubinstein* (1986), 145 Ill. App. 3d 31, 36, 495 N.E.2d 659, 662, citing *In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, 386, 399 N.E.2d 1006, 1009. See generally Davis, *Valuation of Professional Practices and Dissolution Cases,* 74 Ill. B.J. 14 (1985-86).) Goodwill in this context is the portion of the value of the business as a going concern or earning potential in excess of normal return on tangible assets. (*In re Marriage of Suarez* (1986), 148 Ill. App. 3d 849, 499 N.E.2d 642.) The expectancy of earnings is not synonymous with and should not be the basis for determining the value of goodwill.

The courts that allow goodwill to be included in the valuation do so under the theory that despite the intangible quality of goodwill in a professional practice, it is of value to the practicing spouse, both during and after the marriage. (*In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 421.) The value of goodwill is manifested in the amount of business and in the income which the spouse generates. (*In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 421.) To ignore the value of goodwill might result in undervaluing a spouse's assets, thus leading to an inequitable distribution of property.

There is, however, some hesitancy to recognize goodwill as a factor to be valued in dissolution distributions. (*In re Marriage of Rubinstein* (1986), 145 Ill. App. 3d 31, 36, 495 N.E.2d 659, citing *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447. See also *In re Marriage of Greenberg* (1981), 102 Ill. App. 3d 938, 429 N.E.2d 1334; Note, *Family Law—Division of Property Upon Marriage Dissolution—The Illinois Appellate Court Grapples With Goodwill in a Professional Practice—Is It Property or Just Another Factor?,* 1985 S. Ill. U.L.J. 285.) The rationale underlying the court's hesitancy to place a value upon goodwill is that goodwill, which is based upon an individual's ability to generate income, is a

statutory consideration in apportioning marital property under the Act. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 347, 461 N.E.2d 447, 453, citing Ill. Rev. Stat. 1981, ch. 40, par. 503(d).) Since the ability to generate income is a statutory factor, the consideration of goodwill might result in double recovery. *In re Marriage of Greenberg* (1981), 102 Ill. App. 3d 938, 429 N.E.2d 1334; *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447.

■■ Although the clear trend in Illinois is to recognize the goodwill of a professional practice, no clear guidelines exist for a determination of value thereof. The Supreme Court of New Jersey in *Dugan v. Dugan* (1983), 92 N.J. 423, 457 A.2d 1, outlined one appropriate method for the evaluation of goodwill in a law practice. Initially, a comparison is made between the attorney's earnings and the amount earned by an employee with similar qualifications of education, experience, and capability. (*Dugan v. Dugan* (1983), 92 N.J. 423, 439-40, 457 A.2d 1, 9-10; see also Davis, *Valuation of Professional Practices and Dissolution Cases*, 74 Ill. B.J., 14 (1985-86).) The comparison must include the effort or number of hours expended by the attorney. Next, the attorney's net income before taxes for a five-year period should be averaged. This average is in turn compared with the employee norm. If the attorney's actual average exceeds the total of the employee norm and a return on the investment in the physical assets of the practice, the excess becomes the basis for the evaluation of goodwill. To determine goodwill, the excess is subject to a capitalization factor. The capitalization factor is defined as a number of years of excess earnings a purchaser would be willing to pay for, in advance, to acquire the goodwill. *Dugan v. Dugan* (1983), 92 N.J. 423, 457 A.2d 1.

In the case at hand, Smith, whose goodwill calculation was adopted by the court, determined the average earnings for the partners of Stone & Stone for the years 1980 through 1981. Smith contended that he subjected this figure to a number of other factors which cannot be specifically gleaned from the trial court record. Smith then subtracted this figure from actual profits of the partnership. The court reduced Elam's valuation of goodwill specifically for the husband by $5,000, noting the husband's interest in the goodwill of Stone & Stone would be less than that of the father, based upon years of experience.

While the valuation method utilized by the trial court is not crystal clear, we find the distribution of the assets of the husband's interest in Stone & Stone to be equitable. This is especially true considering the trial court's disposition of all of the property of the

parties and its prerogative pursuant to sections 503(d)(4), (7), and (10) of the Act. Consequently, we find no abuse of discretion.

Next, the husband argues that the trial court's distribution of personal property constituted an abuse of discretion resulting in substantial injustice.

██ The Act provides that marital property shall be divided in "just proportions" considering all relevant factors. (Ill. Rev. Stat. 1985, ch. 40, par. 503(d).) Where children are involved, the primary objective of the court is to provide adequate support for the children. (*In re Marriage of Hyland* (1981), 95 Ill. App. 3d 31, 419 N.E.2d 662; *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.) The touchstone of apportionment of marital property is whether the distribution is equitable in nature. Mathematical equality is not required; just proportions do not mean equal amounts. *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.

██ A court reviewing the division of property is not justified in substituting its discretion for that of the trial court. (*In re Marriage of Legge* (1982), 111 Ill. App. 3d 198, 443 N.E.2d 1089; *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.) In determining whether the trial court abused its discretion in dividing property subsequent to dissolution proceedings, the question is whether the trial court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason and ignored recognized principles of law so that substantial injustice resulted. *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.

██ In the case at hand, the record is clear that the trial court conscientiously evaluated all of the relevant circumstances of the parties prior to distributing the personal property. The court awarded a substantially larger portion of the personal property to the husband, the custodial spouse, who also received possession of the marital residence. The husband asserts error in the award of one of the ships he constructed to the wife, but testimony clearly indicated that the ship was marital property. This reasoning applies with equal effect to the trains. The husband admitted that some of the trains were marital property and it was well within the court's discretion to distribute the trains accordingly. The trial court did not act arbitrarily nor was there any injustice as a result of the distribution of personal property. No error.

██ Turning to the question of child support, in Illinois the financial responsibility for the support of the children is a joint and several obligation of each parent. (*In re Marriage of Edelstein* (1980), 82 Ill. App. 3d 574, 403 N.E.2d 323.) The determination of

the proper amount of support lies within the sound discretion of the trial court. (*In re Marriage of Smith* (1984), 122 Ill. App. 3d 213, 460 N.E.2d 1201.) The factors to be considered in determining the proper amount of child support are the financial resources of the child, the financial resources and needs of the custodial parent, the standard of living the child would have enjoyed had the marriage not been dissolved, the physical and emotional condition of the child and his educational needs, and the financial resources and needs of the noncustodial parent. Ill. Rev. Stat. 1985, ch. 40, par. 505.

■■ Substantial economic reverses resulting from changes in employment are proper circumstances to be considered by the court in determining the amount of child support. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 416 N.E.2d 785.) A voluntary change in occupation or employment must be made in good faith. The burden of proving good faith is on the party who voluntarily changed employment. The crucial consideration is whether the change in status was prompted by a desire to evade responsibility of paying child support. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 416 N.E.2d 785; *In re Marriage of Ebert* (1980), 81 Ill. App. 3d 44, 400 N.E.2d 995.) Upon appeal, a trial court's finding of good faith will be upheld unless it is against the manifest weight of the evidence. *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 416 N.E.2d 785; *In re Marriage of Ebert* (1980), 81 Ill. App. 3d 44, 400 N.E.2d 995.

■■ In the case at hand, the wife presented substantial evidence in support of her career change. Specifically noting the market trends with respect to her current employment, she maintained that her change of career would allow for substantial income growth in the future. The record supports the determination by the trial court as to child support.

It should be again noted that the court's order for husband to pay one-half the equity of the marital residence, $14,142, and one-half of the parties' interest in the law practice, $14,203, did not require the husband to pay interest on the amounts due, requiring only monthly payments of $200 each. Although the discounted value is considerably less, it was not error to so order. The trial court's order should be affirmed in all respects.

Affirmed.

SPITZ, P.J., concurs.

JUSTICE GREEN, concurring in part and dissenting in part:

I concur in part to the decision to affirm most of the judgment appealed, but I would reverse the portion dividing the marital property and remand for a redetermination of that issue.

My concern is with the circuit court's inclusion of a sum to reflect goodwill in the value of the husband's law practice. The record indicates that the trial court made every effort to be fair and made a $5,000 adjustment to reflect the greater goodwill which was attributable to the experienced senior member of the firm. Nevertheless, I am now convinced that under the circumstances of this case, a sum representing goodwill should not have been included in the valuation of the husband's law practice as part of his marital estate. Section 503(d)(10) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 503(d)(10)) directs that, in dividing marital property once its value has been determined, the court include in its consideration the opportunity of each spouse to acquire income in the future. Any goodwill connected with the husband's law practice should have been considered only to that extent.

I agree that the trend in this State has been to include valuation for goodwill in evaluating the worth of a professional practice. The circumstances of the various professions vary. However, I believe that when the value of the marital estate of a lawyer is in issue, a determination of the value of goodwill should be included in the evaluation of his law practice under only two circumstances. Such a situation would most likely arise if the lawyer's partnership or corporate agreement provides a method to determine an amount in excess of the value of the tangible assets of the practice to which that lawyer would be entitled upon termination. Such an amount could then be considered as the value of goodwill.

The other circumstance which would require and justify an evaluation of goodwill would occur when the marital estate is too small to fairly compensate the lawyer's spouse by awarding that spouse a sufficient portion of the marital property to reflect the enhanced earning potential of the lawyer-spouse arising from the good reputation and developed clientele of the lawyer's practice. Under such a circumstance, the policy of section 504(b)(1) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 504(b)(1)) to avoid awarding maintenance when marital property is available can only be satisfied with fairness to the lawyer's spouse by attempting to evaluate the goodwill of the lawyer's practice and enhance its value thereby. Then the court can require the lawyer to make a lump-sum payment or several installment payments to the other spouse to effect a fair division of mari-

tal property.

My disapproval of attempts to evaluate goodwill connected with a law practice under usual circumstances arises because: (1) to do so gives the other spouse the benefit of double consideration of the factors involved in goodwill; and (2) accurate determination of the value of goodwill is usually impossible. In struggling with the issue of goodwill, I have found the decision of the First District in the case of *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447, and an incisive case note discussing that decision (Note, *Family Law—Division of Property Upon Marriage Dissolution—The Illinois Appellate Court Grapples With Goodwill in a Professional Practice—Is It Property or Just Another Factor?*, 1985 S. Ill. U.L.J. 285), both cited by the majority, to be highly persuasive.

In *Wilder*, the respondent was an ophthalmologist engaged in retinal surgery. He and another doctor of medicine had formed a professional corporation under an agreement whereby upon withdrawal, either would be entitled to a sum based upon the value of listed assets which did not include goodwill. The First District held that in making a division of property the circuit court did not err in failing to consider goodwill in determining the value of the respondent's shares in the professional corporation regardless of whether such shares were marital property. The First District reasoned that the significance of the goodwill possessed by a professional practice is its ability to enhance the earnings of the professional from the practice. That court then concluded that (1) the factor of income enhancement was to be considered under section 503(d)(10) (Ill. Rev. Stat. 1981, ch. 40, par. 503(d)(10)) in making division of the marital estate and (2) to also consider it in determining the value of the marital estate would permit a double recovery.

The only subsequent opinion of a court of review of this State to discuss *Wilder* is the case of *In re Marriage of Rubinstein* (1986), 145 Ill. App. 3d 31, 495 N.E.2d 659. There, the marital assets to be divided included the petitioner's shares of stock constituting a one-third interest in a professional medical corporation. The petitioner was an internist practicing with the other shareholders. The Second District merely noted the *Wilder* decision but cited the appellate court's other decisions approving the inclusion of goodwill in evaluating professional practices as marital property to be divided. The *Rubinstein* court did not discuss the *Wilder* analysis in any detail but merely stated that "[t]o ignore the intangible asset of goodwill could result in undervaluing the practice * * * and thereby lead to an inequitable distribution of the property." (145 Ill. App. 3d 31, 37, 495

N.E.2d 659, 663.) That court also mentioned that, in *In re Marriage of Davis* (1985), 131 Ill. App. 3d 1065, 476 N.E.2d 1137, the First District court had cited with approval a quote from *In re Marriage of Lopez* (1974), 38 Cal. App. 3d 93, 113 Cal. Rptr. 58, approving a determination of goodwill in evaluating a professional practice for division of marital property.

The Illinois Bar Journal article cited by the majority is also critical of *Wilder*. (Davis, *Valuation of Professional Practices and Dissolution Cases*, 74 Ill. B.J. 14 (1985-86).) That author's thesis is that section 503(d) envisions first an evaluation of the property to be divided and then a division. The author explains that all income-producing marital assets go through that process, with the court considering all of the elements of value and then making a division whereby the future income potential of the spouses from their assets is considered. Examples given are accounts receivable, rental properties, and securities. The article gives some recognition to the fact that the cited assets are readily salable as such, whereas the goodwill of a professional practice is usually not.

The goodwill of a professional practice consists of its reputation and developed clientele. Particularly when the goodwill is that of a law practice, it is not readily transferable and is closely related to the qualities of the lawyer in regard to skill and educational attainment. It has been held that an advanced degree does not constitute marital property. (*In re Marriage of Goldstein* (1981), 97 Ill. App. 3d 1023, 423 N.E.2d 1201.) The fact that the assets cited in the Davis article can be readily sold or preserved for income while goodwill can usually only be effectively used for future income is a strong reason to support the consideration of goodwill only as it bears upon the lawyer's potential for income. Notably, such a consideration of goodwill is not possible in California where the decision in the case of *In re Marriage of Lopez* (1974), 38 Cal. App. 3d 93, 113 Cal. Rptr. 58, was rendered because, under the community property rule of that State, marital property must be divided equally.

The goodwill of a professional practice unquestionably has some value which usually remains after a particular practitioner leaves the practice. Otherwise, as the Fifth District pointed out in the case of *In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 421, firms would not retain the name of former members whose membership has ceased. However, when the basis of determining goodwill is not set forth in the agreement between the proprietors of a law practice, determination of that value is extremely difficult.

The majority has correctly indicated that the formula set forth in

*Dugan v. Dugan* (1983), 92 N.J. 423, 457 A.2d 1, is the accepted procedure for calculating the goodwill of a professional practice, at least one at law. The *Dugan* theory is that the disparity between the earnings of the lawyer-spouse involved in a dissolution proceeding who has a proprietary interest in the practice and a hypothetical average salaried practitioner represents return on goodwill after an adjustment is made for return on tangible assets devoted to the practice. Even assuming that the lawyers to be compared are of reasonably similar ages and practice in reasonably similar communities, the adjusted disparity can be attributed logically to the reputation and clientele of the proprietary lawyer's firm only if the lawyers are of equal knowledge and skill.

Statistics may be readily available concerning the average earnings of lawyers who share no proprietary interest in their practice and who work similar hours and in a similar community to the proprietary lawyer whose goodwill is to be evaluated. However, adjusting these statistics to include only the earnings of nonproprietary lawyers whose skill and knowledge are the same as that of the lawyer subject to inquiry is virtually impossible. Thus, the result obtained by use of the *Dugan* formula, although giving a superficial indication of accuracy, is actually highly conjectural.

Here, the formula by which the goodwill was evaluated is not readily apparent. In any event, no evidence was introduced to indicate that the agreement between the husband and his father provided a formula for determining an amount to which the husband would have been entitled on withdrawal which exceeded the value of tangible assets of the practice. The marital estate was not too small to fairly treat the wife in division of the marital estate by considering the husband's earnings merely to show future earning potential and not to try to determine some value for goodwill. With hindsight, I conclude that this is what should have been done.