# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Dhillon*, 2014 IL App (3d) 130653

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF INDERBIR S. DHILLON, Petitioner-Appellee and Cross-Appellant, and NAVNEET K. DHILLON, n/k/a Navneet Kaur, Respondent-Appellant and Cross-Appellee. |
| District & No. | Third District<br>Docket No. 3-13-0653 |
| Filed<br>Rehearing denied | November 7, 2014<br>December 2, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an appeal from the dissolution of the childless marriage of an engineer and a wife who worked as an accountant, the appellate court remanded the cause with directions to award the wife 50% of the marital funds held in a savings account at the account's high point when the husband later dissipated that amount, and furthermore, the trial court was directed to consider whether the husband dissipated any other funds up to the date the dissolution judgment was entered and to award the husband's nonmarital estate a credit of $3,170.97 against what he owed for the dissipation of the marital funds as reimbursement for money he contributed to his 401(k) account prior to the marriage and to take any further action required. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 07-D-519; the Hon. Michael Risinger, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; caused remanded with directions. |

| Counsel on Appeal | Michael A. Fleming (argued), of Michael A. Fleming, P.C., of Peoria, for appellant. |
|---|---|
| | Kirk W. Bode (argued), of Pekin, for appellee. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion. Justices McDade and Wright concurred in the judgment and opinion. |

## OPINION

¶ 1     After a bench trial in a marital dissolution proceeding, the trial court entered an order dividing the parties' property. Both parties appeal from that order, asserting that the trial court erred in various aspects of its ruling. We agree with the parties that some of the trial court's ruling was erroneous. We, therefore, affirm the trial court's property-division order in part, reverse in part, and remand with directions.

¶ 2                                     I. FACTS

¶ 3     Husband, Inderbir S. Dhillon, and wife, Navneet K. Dhillon, now known as Navneet Kaur, were married in 2002, had no children, and were separated in May 2007. Husband filed for divorce in August 2007, and a bifurcated judgment of dissolution of marriage was entered in July 2009.

¶ 4     A bench trial was held on property division in October 2012. The evidence presented at the trial, which consisted of the testimony of husband and wife and numerous financial documents that were admitted into evidence, can be summarized as follows. Prior to the marriage, starting in about 2000, husband lived in an apartment in Michigan and worked as an engineer for a company named Mahle. An account statement that was admitted into evidence showed that husband had about $60,000 in one of his individual accounts at about the time of the marriage. While husband was working at Mahle prior to the marriage, he contributed to a 401(k) account. An account statement that was admitted into evidence showed that about six months prior to the marriage, husband had $3,170.97 in his Mahle 401(k) account.

¶ 5     After the parties were married, wife moved into husband's apartment in Michigan. Husband managed all of the parties' finances. Husband continued to work full time at Mahle, and wife worked part-time as a cashier at Rite Aid, while she pursued a master's degree in business administration (MBA). Husband's yearly income at that time was about $50,000. Husband continued to contribute to his 401(k) during the marriage until he left his position at Mahle in July or August 2005 to take a position with Caterpillar. When husband left his position at Mahle, he was making about $54,000 per year and had about $19,000 in his 401(k) account.

¶ 6     In August 2005, husband began working for Caterpillar in Peoria and the parties moved to that location. Husband's starting salary with Caterpillar was about $62,000 or $63,000 per year. For about the first five months that the parties lived in Peoria, wife did not work because she was preparing for the certified public accountant (CPA) exam. In about January

2006, wife began working part-time for an accounting firm as an intern and eventually, in summer 2006, transitioned into a full-time job as a CPA with that same firm after she passed the CPA exam. She was paid about $35,000 per year. The incomes of husband and wife increased over time. In the last full year of the marriage, husband's gross income was about $82,000 and wife's was about $49,000.

¶ 7     During the entire marriage, the parties lived very frugally. They owned no real estate, lived in an apartment, and, for the most part, spent money only on necessities. Indeed, for the last several months or year that the parties were together, they were able to live on wife's income alone and were able to save husband's entire net income of over $4,000 per month. In addition, for several months prior to that time, husband and wife were able to save $2,000 to $3,000 per month.

¶ 8     Prior to the parties' move, husband set up several bank accounts for them to use while they lived in Peoria. One of the accounts was established jointly in husband and wife's name, another account was established jointly in the names of husband and his father, and two more accounts were established in husband's name alone. One of the accounts set up in husband's name alone, savings account 4863, is of special relevance to this appeal.

¶ 9     Account 4863 was opened in July 2005. Shortly after the account was opened or within the first month thereafter, several large deposits were made to the account in the approximate amounts of $80,000, $49,000, and $53,000, for a total of approximately $182,000. Because wife was not involved in the parties' finances, she was not aware of account 4863 or of the amount of money it contained. Additional deposits were made to that account during the course of the marriage, including husband's paycheck and bonuses and other lump-sum amounts, and despite occasional withdrawals, the balance in the account continued to grow. According to the bank statements that were admitted at trial, over the course of about two years, by March 2007, the account had grown in value to a high of $301,606.80, a substantial portion of which appeared to be from husband's earnings during the marriage.

¶ 10     During the course of the litigation in this case, husband changed attorneys several times, represented himself *pro se* at times, and was not forthcoming with discovery as to his financial information. Most of the financial information in this case was obtained by wife's attorney through subpoena. One of the financial documents that wife received from husband was a copy of the parties' joint tax return for 2006. When wife obtained a certified copy of that same document from the IRS, however, it showed that $10,000 of interest income that husband had received was not listed on the tax return that husband had provided to wife in discovery but was listed on the tax return that husband had actually filed with the IRS. Husband testified at trial that two versions of the return were prepared, one where he claimed the interest and the other where his father claimed the interest, so that they could determine which approach was the more tax advantageous. Husband indicated that he must have tendered the wrong return to wife in discovery.

¶ 11     After wife subpoenaed the bank information, she learned of savings account 4863 and of the substantial amount of money that it had contained prior to the parties' separation. The bank records showed that husband had essentially depleted the account in a few large transfers over a short period in March 2007. Most of the funds were eventually transferred to an account held in husband's father's name alone. Husband testified that the funds always belonged to his father, that they were placed into account 4863 so that husband could make transfers of money on his father's behalf and so that his father would have money available

to him at various times when he came to the United States from India. Husband testified further that although his paycheck and bonuses were deposited into the account, transfers were also made out of the account for marital expenses. Wife, on the other hand, testified that she and husband were able to save a large amount of money on a monthly basis when they were married, although she did not know how much; she was not aware of the large amount of money in account 4863; and that it was possible that some of the money in account 4863 came from husband's father or sister. Limited financial documents were admitted by husband which showed that large deposits were made into a joint account of husband and his father (or husband and his sister) in July 2005 and that those funds were transferred to account 4863 a short time later.

¶ 12    Regarding the status of the marriage, husband testified that there were no problems in the relationship until wife left him in May 2007. Husband also denied that he ever struck wife or that he was physically abusive. Wife, on the other hand, testified that as of the beginning of 2007, she was very depressed and unhappy about the marriage and believed that husband knew that she felt that way. According to wife, there were several problems with the marriage, and the marriage "just started falling." At various times during wife's testimony, husband's attorney objected when wife was asked questions relative to husband's conduct and to the status of the marriage. In ruling upon those objections, the trial judge stated that the matter was clear to him, that he did not need a lot of evidence on the matter, and that he did not know if husband's attorney was even going to try to rehabilitate husband.

¶ 13    Testifying further, wife stated that husband was physically abusive and would hit her if she objected to or disagreed with husband's actions. Husband was mean to wife's family and would only allow wife's family to stay for a day when they came to visit. In addition, there was growing tension between husband and wife over the wedding of wife's cousin that was scheduled to take place in London in early June 2007. Although wife told husband that she wanted to go to the wedding, husband failed to buy a plane ticket for wife to attend. According to wife, as the wedding date got closer, she and husband had several arguments over that matter and she insisted to husband that she was going to the wedding. Wife eventually asked husband's parents to intervene, and husband's father agreed to buy wife a plane ticket if husband failed to do so. Husband did not buy the ticket until the end of May 2007, only a day or two before the wedding. Wife took a bus to the airport and was very angry and upset with husband when she left, although she was still planning on going back to husband when the wedding was over. After wife arrived in London and spoke to several of her family members, she decided not to return to husband. Instead, wife remained in London for several weeks. Although husband called and tried to speak to wife, wife would not take his calls.

¶ 14    The parties never reconciled or lived together as a married couple after that time. Thus, for all practical purposes, husband and wife were separated as of the end of May or beginning of June 2007. As noted above, husband formally filed for divorce in August 2007, and a bifurcated judgment of dissolution of marriage was entered in July 2009.

¶ 15    At the conclusion of the evidence in the bench trial, the trial court took the case under advisement. The parties submitted their written closing arguments. The trial court later issued its property-division order. Of relevance to this appeal, in the order, the trial court found that: (1) husband had no credibility; (2) all of the funds contained in account 4863 at its highpoint in March 2007 were husband's nonmarital property; (3) the marital estate was not entitled to

reimbursement for the alleged dissipation of the funds from account 4863 because the funds were nonmarital property and because the marriage was not undergoing an irreconcilable breakdown "at the time most of the funds were deposited and later transferred back out"; and (4) husband's nonmarital estate was not entitled to reimbursement for contributions that were made to husband's 401(k) account prior to the marriage because those funds had lost their identity and had become entirely marital property when they were rolled into the marital retirement account at Caterpillar.[1]

¶ 16　　　More specifically as to account 4863, the trial court stated:

> "There is no reimbursement ordered for the large deposits placed into Husband's marital bank account [account 4863]. The marriage was not undergoing a breakdown at the time most of the funds were deposited and later transferred back out. Nor is there any explanation how Husband and Wife could have generated such income (up to $300,000) without the source being outside the marriage. Co-mingling [*sic*] of these funds in a marital account was minimal and then they were withdrawn. There is no way Wife can present evidence that the funds were not indeed a gift or a temporary holding place. In this regard, it really benefited Husband that his father, Jasbir, never testified because the Court never had the opportunity to judge the credibility of Jasbir or have him testify to his business dealings. Mr. Fleming's [wife's attorney] attempted explanation how the parties could have saved this amount falls short. Thus Wife has not proved this claim."

¶ 17　　　Wife and husband both filed motions to reconsider, which the trial court denied. Of relevance to this appeal, in making its ruling on wife's motion, the trial court stated:

> "Regarding Wife's request for half of the '$300,000,['] Wife did not present evidence at trial nor via argument on her Motion to Reconsider such that the Court could trace such funds to deem the marriage to be a source of these funds. In fact the Court jotted down this thought in its personal notes from trial, 'H lived semi-frugally, but even if he spent non [sic] of his paycheck, he wouldn't have accumulated $300,000.' The Court believed then, and still believes today, that the source of the funds came from outside the marriage, namely Husband's father. Husband's explanation at trial that the funds came from his Father and were given back to his father is logical. Previous in the marriage, the Husband had not hesitated to set up accounts in his sole name or jointly with his wife. It is only logical that he would have treated these funds, from which there is no explanation as to how they could have been generated from the marriage, the same for banking purposes."

¶ 18　　　This appeal and cross-appeal followed.

## II. ANALYSIS

¶ 19

### A. Burden of Proof

¶ 20

¶ 21　　　As her first point of contention on appeal, wife argues that the trial court erred in its property division ruling by incorrectly placing the burden of proof on wife to show that savings account 4863 was marital property. As evidence of that claim, wife points to the trial court's statements in the initial property division order and in the ruling on wife's motion to

---

[1]Some of the findings listed were implicit in the trial court's ruling and were not stated expressly.

reconsider where the trial court indicated that wife had failed to show that the funds in the account were from a marital source. Wife asserts that those statements clearly establish that the trial court incorrectly put the burden of proof on wife.

¶ 22    Husband disagrees with that assertion and argues that the trial court correctly applied the burden of proof in this case. According to husband, although there may have been some confusion after the trial court's initial order, it is clear from the trial court's ruling on wife's motion to reconsider that the trial court correctly put the burden of proof on husband to show that the funds in the account came from a nonmarital source and that the trial court ultimately found that husband had satisfied that burden by clear and convincing evidence.

¶ 23    The application of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 2012)) is a question of law, which the appellate court reviews *de novo* on appeal. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). In addition, questions regarding the burden of proof and whether it was applied correctly in the trial court are also questions of law that are subject to *de novo* review on appeal. *1350 Lake Shore Associates v. Healey*, 223 Ill. 2d 607, 627 (2006).

¶ 24    Under the Act, all property acquired by either spouse during the marriage and before a judgment of dissolution is presumed to be marital property, regardless of how title is actually held. 750 ILCS 5/503(b)(1) (West 2012); *In re Marriage of Gattone*, 317 Ill. App. 3d 346, 351-52 (2000). The presumption of marital property can be overcome only with a showing by clear and convincing evidence that the property falls into one of the categories of exceptions listed in section 503(a) of the Act. 750 ILCS 5/503(a), (b)(1) (West 2012); *Gattone*, 317 Ill. App. 3d at 352. The burden to make that showing is on the party claiming that the property is nonmarital. *Id.* Any doubts as to the classification of property will be resolved in favor of finding that the property is marital property. *Gattone*, 317 Ill. App. 3d at 352.

¶ 25    In the present case, because account 4863 was opened during the marriage, the marital presumption clearly applied to the account and to the funds therein. See 750 ILCS 5/503(b)(1) (West 2012); *Gattone*, 317 Ill. App. 3d at 351-52. It was husband's burden, therefore, to show by clear and convincing evidence that the funds in the account had come from a nonmarital source since husband was seeking to have the funds classified as nonmarital property. See 750 ILCS 5/503(b)(1) (West 2012); *Gattone*, 317 Ill. App. 3d at 352. However, as wife suggests, the trial court's statements in both the initial property-division order and in the order denying wife's motion to reconsider indicate that the trial court incorrectly interchanged the burden of proof and required wife to prove that the account and the funds therein were marital property and not the separate nonmarital property of husband. The clearest indication of that error was when the trial court stated in the orders that the parties could not have saved such a large amount of money during the course of their marriage, regardless of how frugal they were, and that the funds, therefore, must have come from husband's father. The trial court reached that conclusion despite the fact that the only evidence that the funds came from husband's father was husband's testimony, which the trial court found to be completely lacking in credibility. Although documentary evidence was presented as to the matter, it provided no indication that the funds belonged to husband's father. Rather, the documentary evidence showed at best that the funds made a brief stop in other accounts before the funds were transferred into account 4863. Although husband's father and sister had an interest in those accounts, husband, as a joint holder, had an interest

as well. Faced with a lack of evidence to determine where the funds in account 4863 had come from, the trial court made an assumption that it could not have come from the marriage and had to have come from husband's father. By making that assumption, the trial court in effect incorrectly and erroneously put the burden of proof on wife. The trial court should have found instead that because it had not been proven where the funds in account 4863 had come from, husband, as the party with the burden of proof, had failed in that burden, and that the funds, therefore, were deemed to be marital property. See 750 ILCS 5/503(b)(1) (West 2012); *Gattone*, 317 Ill. App. 3d at 351-52.

¶ 26                                B. Classification of Funds in Account 4863

¶ 27    As her second point of contention on appeal, wife argues that the trial court erred in finding that all of the funds in account 4863 were the nonmarital property of husband. In support of that argument, wife asserts that: (1) the marital presumption applied to account 4863 and to the funds therein because the account was established during the marriage; (2) when the burden of proof is correctly applied to husband, it is clear that husband did not satisfy his burden to establish by clear and convincing evidence that the funds were acquired from a nonmarital source because the only evidence in support of husband's claim in that regard was a few documents and husband's own testimony, which the trial court found to be completely lacking in credibility; (3) even if the trial court was correct in finding that the initial large deposits to the account were nonmarital property, those funds were later transmuted to marital property, subject to husband's right of reimbursement, when they were extensively commingled with marital funds (husband's paycheck and bonuses) over a two-year period; and (4) the trial court's finding of nonmarital property was primarily the result of its incorrect application of the burden of proof and was against the manifest weight of the evidence.

¶ 28    Husband argues that the trial court's ruling was proper and should be affirmed. Husband asserts that: (1) although the account was established during the marriage, it was opened in husband's name alone with the clear purpose of being a repository for nonmarital money that came from husband's father and sister; (2) because the account was never placed into some form of co-ownership, it maintained its status as nonmarital property; (3) to the extent that it was husband's burden to establish that the initial large deposits came from nonmarital sources (husband's father and sister), husband did so by clear and convincing evidence as the funds were directly traceable to those nonmarital sources; (4) wife's efforts to attribute the funds to the savings from the parties' frugal lifestyle were totally without merit and were rejected by the trial court; (5) wife even acknowledged in her own testimony during the bench trial that she did not know about the money in the account and that some of the funds may have come from the husband's father and sister; (6) when the small amount of marital funds were added to, and commingled with, the much larger nonmarital funds in the account over a short period of time, the marital funds were transmuted to nonmarital property (the receiving estate), subject to the marital estate's right of reimbursement, if wife could establish by clear and convincing evidence that reimbursement was due and the appropriate amount of reimbursement; and (7) although marital funds were placed into the account, comparable amounts were transferred out of the account and used for marital expenses, so that the marital transfers into and out of the account essentially netted out, as the trial court found.

¶ 29     In a dissolution of marriage proceeding, a trial court's factual findings–such as whether property is marital or nonmarital, the fair market value of property, whether reimbursement is appropriate, or whether dissipation has occurred–will not be reversed on appeal unless they are against the manifest weight of the evidence. See *Gattone*, 317 Ill. App. 3d at 351 (classification); *In re Marriage of Hubbs*, 363 Ill. App. 3d 696, 699-700 (2006) (valuation and dissipation); *In re Marriage of Vancura*, 356 Ill. App. 3d 200, 205 (2005) (dissipation); *In re Marriage of Ford*, 377 Ill. App. 3d 181, 185-86 (2007) (reimbursement). A finding is against the manifest weight of the evidence only if it is clearly apparent from the record that the trial court should have reached the opposite conclusion or if the finding itself is arbitrary, unreasonable, or not based upon the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 30     Before property can be assigned or divided in a dissolution of marriage proceeding, it must first be classified by the trial court as either marital or nonmarital. *Gattone*, 317 Ill. App. 3d at 351; *In re Marriage of Cecil*, 202 Ill. App. 3d 783, 787 (1990). As noted above, a presumption of marital property applies to all property acquired during the marriage, which may be rebutted by clear and convincing evidence to the contrary. See 750 ILCS 5/503(a), (b)(1) (West 2012); *Gattone*, 317 Ill. App. 3d at 351-52. Any doubts as to the classification of property will be resolved in favor of finding that the property is marital property. *Gattone*, 317 Ill. App. 3d at 352. One of the listed categories of exceptions is property acquired by gift, legacy or descent. 750 ILCS 5/503(a)(1) (West 2012). Thus, property acquired during the marriage by one of the spouses by gift is generally the nonmarital property of the spouse that received the gift. See *id.*

¶ 31     In the present case, although husband occasionally referred to the large deposits that were initially made into account 4863 as a gift from his father, it is clear from the record and from husband's arguments before the trial court and this court that husband is not contending that the funds were a gift. Rather, husband is contending that the funds always belonged to his father and were only placed in account 4863 as a matter of convenience so that husband could transfer money on his father's behalf and so that husband's father would have money available to him when he was living or staying in the United States. Thus, we do not believe that the gift presumption would apply in this case and that the only presumption that is applicable here is the marital presumption. See *In re Marriage of Hagshenas*, 234 Ill. App. 3d 178, 186-87 (1992) (noting that in a situation where both the gift presumption and the marital presumption apply to the property to be classified, the two presumptions cancel each other out, and a simple manifest weight of the evidence standard applies). Husband seems to recognize as much as husband acknowledges in his appellate brief that it was his burden to show by clear and convincing evidence that the funds in question were directly traceable to his father's money.

¶ 32     While we agree with husband's statement in that regard, we find that the trial court's conclusion–that the funds in account 4863 were not marital property–was against the manifest weight of the evidence. As noted above, in making its determination, the trial court incorrectly placed the burden of proof on wife to establish that the funds were marital property, despite the fact that the account was opened during the marriage. The main evidence that husband presented to establish that the funds belonged to his father and were placed in the account as a matter of convenience for his father was husband's own testimony, which the trial court found to be completely lacking in credibility. Husband's testimony,

therefore, could not have served as the basis for the finding that the funds in account 4863 were nonmarital property. In addition, as noted previously, the documentary evidence presented by husband in support of his claim of nonmarital property was completely insufficient to establish that contention. The bank statements that husband provided showed only that the funds in question made a brief stop in the joint account of husband and his father (or husband and his sister) before being transferred shortly thereafter to account 4863. Husband provided no further documentation to support his claim, nor is there any dispute in this case that the lack of financial records was solely attributable to husband. Furthermore, the fact that husband tendered to wife in discovery a tax return that failed to show over $10,000 that husband had received in interest income from the account serves to bolster the trial court's conclusion that husband had no credibility. A copy of the actual tax return received by wife from the IRS listed the $10,000 as interest income. The actual return provides some indication that the funds belonged to husband and not to husband's father, as husband was the person who had apparently received the interest and was claiming the interest for tax purposes. Husband also seems to ignore the fact that he held a joint interest in the accounts where the money first appeared before it was transferred to account 4863 and presents nothing that would negate his interest in those accounts. Based on all of the evidence presented and the burden of proof in this case, it is clearly apparent that the trial court should have found that the initial large deposits into account 4863 were marital property. The trial court's conclusion to the contrary, therefore, was against the manifest weight of the evidence. See *Gattone*, 317 Ill. App. 3d at 351; *Best*, 223 Ill. 2d at 350. It follows, then, that the remaining funds that were added to the account over time during the marriage and which primarily consisted of husband's paycheck and work bonuses remained marital property when they were added to the account. The trial court erred in concluding to the contrary. See *id*. We, therefore, reverse the trial court's finding in that regard and conclude that all of the $301,606.80 in account 4863 at its high point in March 2007 was marital property inasmuch as the presumption of marital property was not rebutted by clear and convincing evidence.

¶ 33                                  C. Dissipation of Funds in Account 4863

¶ 34       As her third point of contention on appeal, wife argues that the trial court erred in failing to find that husband had dissipated the funds in account 4863 by transferring a substantial amount of those funds to his father's account and eventually closing account 4863. Wife asserts that the trial court's error in that regard was based primarily upon two incorrect determinations that the trial court made: (1) that the marriage was not undergoing a breakdown at the time most of the funds were deposited and were later transferred back out; and (2) that the funds were not marital property and belonged to husband's father. Wife contends that both of those determinations were contrary to the evidence presented, the trial court's comments in ruling upon objections during the trial, and the trial court's finding that husband was completely lacking in credibility.

¶ 35       Husband argues that the trial court's implicit ruling on dissipation was proper and should be affirmed. Husband asserts that the two underlying determinations cited by wife were correctly made by the trial court and that they ultimately justified the trial court's ruling on this issue. As we have already concluded that all of the funds in account 4863 were marital property (and that the trial court's conclusion to the contrary was against the manifest weight

of the evidence), we will address only the remaining determination–that the marriage was not undergoing an irreconcilable breakdown at the time that account 4863 was depleted.

¶ 36    Dissipation occurs when one spouse uses a marital asset for his or her sole benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 983 (1992). The issue of dissipation is generally a fact-intensive inquiry that calls upon the trial court to make a credibility determination as to the explanation given by the spouse charged with dissipation as to how the funds were used. See *id*. at 983-84. A trial court's ruling on dissipation, therefore, will not be reversed on appeal unless it is against the manifest weight of the evidence. *Vancura*, 356 Ill. App. 3d at 205; *Tietz*, 238 Ill. App. 3d at 983-84.

¶ 37    Having thoroughly reviewed the evidence presented in the instant case, we find that the trial court's determination–that the marriage was not undergoing an irreconcilable breakdown when the funds were transferred out of account 4863–was against the manifest weight of the evidence. The evidence presented at trial established that by at least the start of 2007, wife was very upset and depressed about the marriage because, among other things, husband was very controlling and was physically abusive. As the year continued, wife grew more and more angry and upset with husband as husband continued to delay in purchasing a plane ticket for wife to attend her cousin's wedding in London, an event that was very important to wife to attend. The situation deteriorated to the point where wife eventually had to ask husband's parents to intervene, and husband's father agreed to purchase the ticket if husband did not do so. Most telling, however, is the fact that during a short period in March 2007, while all of the other problems were occurring, husband withdrew or transferred the majority of the funds out of account 4863, a marital account as we noted above, with no explainable reason. Based on all of the credible evidence presented, it is apparent from the record that the marriage was in fact undergoing an irreconcilable breakdown when the marital funds were withdrawn from account 4863. Indeed, the trial judge seemed to reach that same conclusion as the trial judge made various comments in ruling upon objections at the bench trial indicating that the status of the parties' relationship at that time was very clear to him, that he did not need a lot of evidence on that issue, and that he did not know if husband's attorney was even going to try to rehabilitate husband.

¶ 38    The only evidence to the contrary presented at trial was husband's testimony that there was nothing wrong with the relationship during that time period, testimony which the trial court found to be completely lacking in credibility and which, therefore, could not have supported the trial court's determination as to the absence of a breakdown in the relationship at that time. Although wife testified that she did not make the decision to leave husband until she was in London for the wedding and had spoken to members of her family, that fact, in and of itself, is not dispositive of this issue because the law on dissipation requires only that the marriage had begun to undergo an irreconcilable breakdown, not that the marriage had reached its final breaking point. See *In re Marriage of Holthaus*, 387 Ill. App. 3d 367, 375 (2008). We believe that it was clearly obvious from the evidence presented in the instant case, as the trial court seemed to indicate at times, that the parties' marriage was undergoing an irreconcilable breakdown at the time the funds were removed from account 4863. The trial court's ruling to the contrary was against the manifest weight of the evidence. See *Gattone*, 317 Ill. App. 3d at 351; *Best*, 223 Ill. 2d at 350.

¶ 39 As set forth above, we have concluded that account 4863, and the funds therein, were marital property. We have also concluded that the marriage was undergoing an irreconcilable breakdown in March 2007 and thereafter when husband withdrew or transferred over $300,000 out of the account. We find, therefore, that husband dissipated marital funds when he depleted the account and that the trial court's implicit ruling to the contrary was against the manifest weight of the evidence. See *Vancura*, 356 Ill. App. 3d at 205; *Tietz*, 238 Ill. App. 3d at 983-84. Husband provided no explanation for the use of the funds, other than he was returning the money to his father, an explanation that we have rejected, as indicated above, based upon the trial court's determination that husband's testimony had no credibility and also based upon the lack of any other evidence.

¶ 40 We remand this case for the trial court to order husband to pay reimbursement to wife of $150,803.40 (one-half of $301,606.80, the high point in account 4863 in March 2007) for the marital funds that were dissipated from account 4863. Our direction in that regard is consistent with the trial court's manner of dividing the marital property evenly between the parties in this case. The trial court should also consider whether any marital funds were dissipated from March 2007 up until July 2009, when the judgment for dissolution of marriage was entered.

¶ 41                    D. Failure to Award Wife a Substantial Portion of the Funds in Account 4863

¶ 42 As her fourth point of contention on appeal, wife argues that the trial court abused its discretion in failing to award her a substantial portion of the funds from account 4863. Wife's entire argument on that issue is premised upon the conclusion that the funds in account 4863 were marital property. As we have already found in favor of the wife in support of that conclusion, we need not rule upon this issue further. This case is remanded for the trial court to award wife 50% of the funds that were in account 4863 as of its high point in March 2007, which is consistent with the manner in which the trial court divided the other marital property in this case, and for the trial court to consider whether additional marital funds were dissipated after that time and up until the point when the judgment for dissolution of marriage was entered.

¶ 43                              E. Failure to Award Husband's Nonmarital Estate
                       Reimbursement for Premarital Contributions to His 401(k) Account

¶ 44 As the final issue, we must address the contention raised by husband in his cross-appeal–that the trial court erred in finding that his entire 401(k) account was marital property, including a portion that had been accumulated prior to the marriage. Husband asserts, although somewhat implicitly, that his nonmarital estate should have been reimbursed for the contributions that were made to the 401(k) account prior to the marriage, which husband claims were clearly traceable to the rollover of his Mahle 401(k) account.

¶ 45 Wife disagrees with that assertion and contends that the Mahle rollover, which included both nonmarital and marital funds, was placed into husband's Caterpillar 401(k) account and later commingled with the subsequent, entirely marital contributions to that account to the extent that there was a loss of identity between the two contributing estates. Thus, according to wife, any nonmarital funds in the account were transmuted to marital property, as the trial court correctly found.

¶ 46    As noted above, a trial court's factual findings in a marriage dissolution proceeding–such as whether property is marital or nonmarital or whether reimbursement is appropriate–will not be reversed on appeal unless they are against the manifest weight of the evidence. See *Ford*, 377 Ill. App. 3d at 185-86; *Gattone*, 317 Ill. App. 3d at 351. Section 503(c) of the Act provides, under certain circumstances, for reimbursement to the nonmarital estate of a spouse for contributions made to the marital estate. See 750 ILCS 5/503(c)(2) (West 2012). For reimbursement to be required, the contribution must be traceable by clear and convincing evidence and must not have been intended as a gift to the marital estate. 750 ILCS 5/503(c)(2) (West 2012). The burden of proof to establish that reimbursement is appropriate is on the party seeking reimbursement. *In re Marriage of Werries*, 247 Ill. App. 3d 639, 644 (1993).

¶ 47    In the present case, the evidence established that husband's Mahle 401(k) account, which included both marital and nonmarital contributions, was rolled into husband's Caterpillar 401(k) account and that numerous contributions of marital funds were made to that account over the next several years up until the point that the judgment for dissolution was entered in July 2009. The evidence presented by husband to establish the amount of nonmarital funds added to the account consisted of his testimony and a previous statement showing the balance in his Mahle 401(k) some months prior to the marriage and another statement showing the total amount of the rollover, a few years after the marriage. Although the trial court found that husband's testimony was not credible, the documentary evidence established the exact amount that husband had contributed to his 401(k) account shortly before the marriage. The trial court, therefore, erred when it determined that the entire Caterpillar 401(k) was marital property and that husband's nonmarital estate was not entitled to reimbursement. We reverse that portion of the trial court's property-division order and remand for the trial court to order a credit of $3,170.97 to husband's nonmarital estate (the nonmarital portion of husband's 401(k) account) by awarding husband a credit of $3,170.97 against what husband owes for the dissipation of the marital funds in account 4863.

¶ 48                                    III. CONCLUSION

¶ 49    For the foregoing reasons, we reverse those parts of the trial court's property-division order noted above and affirm the remaining parts of the trial court's property-division order. We remand the case for the trial court to: (1) award wife reimbursement for 50% of the marital funds that were held in account 4863 at its high point in March 2007 (50% of $301,606.80), which were later dissipated by husband; (2) consider whether any other marital funds were dissipated after that time and up until the time when the judgment for dissolution was entered in July 2012; (3) award husband's nonmarital estate $3,170.97 as a credit against what husband owes for the dissipation of the marital funds in account 4863 as reimbursement for funds contributed to husband's 401(k) account prior to the marriage; and (4) take any other further action as necessitated by, and consistent with, this opinion.

¶ 50    Affirmed in part and reversed in part; caused remanded with directions.