**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220216-U

Order filed July 13, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| JAVAIRIA MANSOOR, | ) | Will County, Illinois, |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-22-0216 |
| and | ) | Circuit No. 20-D-1044 |
| | ) | |
| SYED SHAZAN MOHAMMED, | ) | Honorable |
| | ) | Dinah Archambeault, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Brennan and Albrecht concurred in the judgment.

**ORDER**

¶ 1        *Held*:  The trial court's valuation of missing nonmarital jewelry was against the manifest weight of the evidence.

¶ 2        Respondent, Syed Shazan Mohammed, appeals from the trial court's judgment dissolving his marriage to petitioner, Javairia Mansoor. In part, the judgment required respondent to either return petitioner's nonmarital property or pay her $30,000 if not returned. For the following reasons, we vacate that portion of the order and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4        The parties married on July 3, 2018. In April 2019, petitioner left the marital residence and, in July 2020, petitioned to dissolve the parties' marriage. In December 2020, she petitioned to remove her personal belongings from the marital residence and/or for a temporary restraining order and attached an inventory of the belongings she had left behind at the residence. In January 2021, the trial court granted petitioner's petition to remove personal belongings and/or for temporary restraining order by agreement of the parties. In April 2021, petitioner moved for an inventory of the marital residence for discovery purposes, and the court granted the motion, once again by agreement.

¶ 5        During trial, the only disputed issue was the value of petitioner's nonmarital property. Petitioner testified she left personal property behind when she left the marital home, including makeup, clothes, and jewelry, because respondent physically prevented her from taking her property. She prepared an inventory of all of her belongings that remained in respondent's possession, but the inventory was not admitted into evidence. However, the trial court admitted individual pictures of clothes, makeup, and jewelry that were acquired before the marriage. The items at issue in this appeal are (1) a gold necklace and earring set gifted by petitioner's cousin (exhibit 6B), (2) gold bangles with ruby stones gifted by her relatives (exhibit 6J), (3) necklace and earrings gifted by petitioner's aunt and uncle (exhibit 6II), (4) a set of six gold bangles purchased by her parents for $2000 (exhibit 6KK), (5) a pendant necklace and matching earrings gifted by petitioner's cousin (exhibit 6LL), (6) a family heirloom pearl necklace and matching earring set gifted by her parents (exhibit 6MM), and (7) jewelry gifted by respondent for the

2

wedding (exhibit 6OO)[1]. She testified respondent constantly told her that he spent $60,000 on her wedding jewelry (exhibit 6OO). She also testified that in September 2018, respondent collected all her jewelry to keep in a safe deposit box, because it was not safe to keep so much valuable jewelry in the home. She was unsure if the safe was located in a bank or in the home. During their separation, she did not return to the marital residence, nor did she exchange property with respondent. But the two communicated during this time and respondent visited her.

¶ 6        Respondent testified he packed all of petitioner's remaining property into two suitcases. The marital home actually belonged to his parents. Petitioner and respondent lived on the lower level, and respondent's parents and siblings lived on the upper level. In December 2019, respondent moved to Atlanta, but he returned to the residence in April 2020, where he was living at the time of the trial. He testified that before their separation, petitioner visited her family every other weekend, and she took items with her. He did not monitor what petitioner was taking and bringing back. When they lived together, petitioner kept her items in a wardrobe, dresser, and two suitcases. By the time he packed up her remaining belongings, he noted the wardrobe and dresser were "thinned out." He did not recall seeing the jewelry at issue when he was packing, and he would have remembered if he did see it. He testified he did not dispose of, or otherwise sell, transfer, convey, or conceal any of petitioner's items. However, he also said, "I don't know what's there, what's not. It's my parents' prerogative if they want to throw anything out, whatever it is. It's their home. She left things behind. I wasn't there. But whatever that is there, I packed it up and obviously she can have it."

_____

[1] Although the exhibits were not included in the record for our review, we include the exhibit labels for clarification.

¶ 7 Respondent testified he drained his 401(k) of $30,000 to pay for the wedding. The parties had two wedding receptions, one hosted by each party's family. Respondent paid $20,000 for the reception hosted by his family, and also helped petitioner's family pay for their portion. He spent $20,000 on petitioner's engagement jewelry, consisting of a three carat diamond ring, a wedding band, and a nose ring. In total, respondent spent $50,000 on the wedding.

¶ 8 Respondent testified he never told petitioner that he spent $60,000 on her wedding-day jewelry (exhibit 6OO). He testified the wedding-day jewelry was costume jewelry he purchased in India at what he described as a "glorified Claire's" for $400 in cash. According to respondent, it would be illegal for someone to carry that much gold from India to the United States. He also testified he never took petitioner's jewelry to keep in a safe, his parents do not have a safe deposit box, and petitioner had access to all her jewelry at all times during the marriage. When petitioner left in April 2019, she spent an hour and a half packing while her parents waited outside. He did not rush her, and he remained on the upper level of the home. Petitioner took her engagement jewelry with her.

¶ 9 The trial court found petitioner's testimony that she left the jewelry credible. The trial court also found respondent's testimony that he did not dispose of the jewelry credible but was not convinced the jewelry was unavailable. The court reserved its ruling until respondent consulted with his parents to determine if they have a safety deposit box or if the jewelry was still in the home, because the court "thinks it is somewhere." The court did not award anything for petitioner's makeup and clothing. Respondent was ordered to bring the suitcases with petitioner's belongings to the next court date.

¶ 10 But respondent did not appear at the next court date. His attorney noted that he had correspondence with respondent after the trial but had not heard from him since. Respondent told

4

his attorney that he spoke with his parents, who affirmed they never had any kind of safety deposit box, nor had they knowingly taken possession of any jewelry or property that might have been left at the residence. Respondent had also looked through the suitcases with petitioner's property, and reported that most were items of clothing, with little to no jewelry.

¶ 11     The court entered a judgment dissolving the parties' marriage and stated as follows:

> "I find wife's testimony credible that she left items behind when she moved out and that she testified that husband put her jewelry in a safe place. Wasn't sure where, wasn't sure in what, but that he took the jewelry because they lived in Chicago, and he felt it was unsafe.
>
> I don't find husband's testimony credible that he said she took everything, and that she left all of her jewelry in the top drawer, and that he denied taking the jewelry for safe keeping. I do not find that testimony credible.
>
> I don't find it credible that he bought jewelry as a wedding present that was costume jewelry for $400. I have considered the testimony and the exhibits and I do not believe that [exhibit 6OO] is costume jewelry. I don't find that to be credible. It appears that it is, in fact, as wife testified that it is not costume jewelry.
>
> I also find that in addition he testified he spent $20,000 on a three carat diamond ring band and nose ring for his wife before the wedding, and yet he would only spend $400 on jewelry for wedding gifts. I just don't find that to be credible. You're not going to spend $20,000 on beautiful jewelry and then $400 on costume jewelry for wedding presents. And there was a multitude of jewelry items in Exhibit OO."

The court also found not credible respondent's testimony that he had no money left over after emptying his 401(k) because he was working with an annual salary of $110,000. The court ordered respondent to reimburse petitioner $30,000 for the cost of the items unless he returned the items she left behind within the next 30 days.

¶ 12    Respondent moved to reconsider, stating he was not present in court at the ruling due to the death of his uncle, and he traveled to California for Islamic funeral customs and services. Islamic funeral customs provide a period of mourning and prayer of at least three days, and during this period, mourners do not use electronic devices, which explained why he did not contact his attorney. The court denied the motion. This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, respondent argues the trial court (1) erred in valuing the jewelry at $30,000, (2) made inappropriate credibility determinations, and (3) lacked sufficient competent evidence to determine the value of the jewelry. Petitioner responds that respondent's failure to provide a complete record on appeal—via his failure to include the photographs of the jewelry in the record—requires affirmance. Even so, she maintains, the court did not err, and respondent also did not provide valuations at trial.

¶ 15                                 A. Incomplete Record

¶ 16    We first address petitioner's contention that respondent failed to provide a complete record for our review. "An appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391–92 (1984). "However, an

6

incomplete record does not preclude a reviewing court from determining whether a trial court's findings or rulings are correct where that determination can be made from the incomplete record presented." *Dubey v. Abam Building Corp.*, 266 Ill. App. 3d 44, 46 (1994).

¶ 17 The record contains a full transcript of the bench trial and the court's ruling but does not contain the photographic exhibits admitted at trial. Petitioner argues it is impossible for this court to review the totality of the evidence the trial court considered when valuing the jewelry without viewing the images of the jewelry presented at trial, and transcripts alone are insufficient to conduct a full review. Respondent argues that a sufficient record exists because the photographs provide no evidence of the jewelry's value. Neither party produced an appraisal or expert testimony to establish the value of the jewelry, and this court would not be able to determine value based solely on photographs.

¶ 18 We agree with respondent. Because the value of jewelry cannot be established by photographs alone, their omission from the record does not preclude our review.

¶ 19                                     B. Credibility Determinations

¶ 20 "Credibility determinations are within the sole purview of the trier of fact." *In re Marriage of Georgiades*, 2021 IL App (2d) 200677, ¶ 5. Respondent argues the trial court discounted his testimony regarding the value of the wedding-day jewelry when petitioner provided no testimony about the quality of the wedding-day jewelry. "It is well established that credibility determinations should be left to the trial court, as it is in the best position to observe the personalities and temperaments of the parties and assess their relative credibility when there is conflicting testimony on issues of fact." *In re Marriage of Stoker*, 2021 IL App (5th) 200301, ¶ 70. Our review of the record does not support a finding that the trial court erred in its assessment of the parties' credibility at trial. See *In re Marriage of McHenry*, 292 Ill. App. 3d 634, 641 (1997).

7

¶ 21                                    C. Valuation

¶ 22        In dissolution proceedings, we review a trial court's findings concerning the value of property against the manifest weight of the evidence. *In re Marriage of Dhillon*, 2014 IL App (3d) 130653, ¶ 29; see also *In re Marriage of Hubbs*, 363 Ill. App. 3d 696, 699-700 (2006) (discussing the standards of review applicable in property-division matters and explaining factual determinations, such as property valuation, are reviewed against the manifest weight of the evidence). "A finding is against the manifest weight of the evidence only if it is clearly apparent from the record that the trial court should have reached the opposite conclusion or if the finding itself is arbitrary, unreasonable, or not based upon the evidence presented." *Dhillon*, 2014 IL App (3d) 130653, ¶ 29.

¶ 23        "Before a court may distribute property upon the dissolution of a marriage, it must first classify the property as either marital or nonmarital." *In re Marriage of Faber*, 2016 IL App (2d) 131083, ¶ 3. Here, the trial court determined the items at issue were nonmarital property, a fact not in dispute.

¶ 24        "It is the obligation of the parties in a dissolution proceeding to present the court with sufficient evidence of the value of property." *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 40. "A trial court can only reach its determination of value based on the evidence presented." *Id.* The valuation of assets in a dissolution of marriage action and any conflicts in testimony concerning the valuation of such assets must be resolved by the trier of fact. *In re Marriage of Schneider*, 214 Ill. 2d 152, 171 (2005). "Generally, as long as the trial court's valuation of marital assets is within the range testified to by expert witnesses, it will not ordinarily be disturbed on appeal." *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 663 (2008). The court shall employ a fair market value standard in determining the value of assets. 750 ILCS 5/503(k) (West 2020). Prior to

the 2016 amendments to the Illinois Marriage and Dissolution of Marriage Act (Act), "there [was] no requirement that a trial court place a precise figure on each item of property, but only that there be competent evidence of value and that the court's division be supported by that evidence." *In re Marriage of Mullins*, 121 Ill. App. 3d 86, 89 (1984). The Act's 2016 amendments now require the trial court to "make specific factual findings as to its classification of assets as marital or non-marital property, values, and other factual findings supporting its property award." 750 ILCS 5/503(a) (West 2020).

¶ 25     The trial court valued the jewelry at issue at $30,000 and determined that respondent must either return the property or pay that amount to petitioner. The court's finding regarding the jewelry's value, however, was not supported by sufficient evidence. During trial, neither party provided any evidence of the value of the jewelry, save for a set of bangles purchased for $2000 and the wedding-day jewelry (exhibit 6OO), which petitioner said respondent purchased for $60,000. Petitioner testified the remaining pieces were gifts or family heirlooms but presented no evidence concerning their composition, purchase price, or current fair-market value. Respondent testified that he spent $400 on costume jewelry for the wedding, but he was not able to provide any receipts or evidence, and he did not offer a value for any of the remaining items.

¶ 26     "A party must present sufficient evidence of the value of the property, and where a party has had a sufficient opportunity to introduce evidence but offers none, that party should not benefit on review from its omission." *In re Marriage of Abu-Hashim*, 2014 IL App (1st) 122997, ¶ 30. "Otherwise, remanding 'would only protract the litigation and clog the trial courts with issues which should have been disposed of at the initial hearing.' " *Id.* But here, neither party presented sufficient evidence of the value of petitioner's jewelry. There were no expert appraisals, receipts, or any other evidence for the court to base its valuation. Moreover, there was no testimony on

whether it is customary to wear costume jewelry at weddings. Where evidence in the record as to valuation of nonmarital property is lacking, there is no basis upon which a reviewing court can determine the propriety of the trial court's award. *In re Marriage of Cuisance*, 115 Ill. App. 3d 551, 556 (1983). In *Cuisance*, the appellate court remanded the case for further proceedings on the issue of asset valuation, stating, "In the absence of evidence of valuation, we do not believe that the division of the parties' marital property could have been fully determined by the trial court." *Id.* at 557. At issue here is nonmarital property, but the logic is the same. The trial court's order requiring respondent to reimburse petitioner $30,000 for the jewelry was "not based upon the evidence presented." *Dhillon*, 2014 IL App (3d) 130653, ¶ 29. Simply put, there was no evidence supporting such a value, other than petitioner's testimony as to the value of the bangles (exhibit 6J) and the parties' conflicting testimony as to the value of the wedding-day jewelry (exhibit 6OO). The trial court here nevertheless placed a value of $30,000 on all of the identified items and compounded its error by failing to make any specific findings as to each item's value. See 750 ILCS 5/503(a) (West 2020). Accordingly, the court's order requiring respondent to reimburse petitioner $30,000 was against the manifest weight of the evidence.

¶ 27 Therefore, we vacate the portion of the judgment requiring respondent to pay petitioner $30,000, and we remand for the parties to provide evidence of the value of the missing jewelry: (1) a gold necklace and earring set gifted by petitioner's cousin (exhibit 6B), (2) gold bangles with ruby stones gifted by her relatives (exhibit 6J), (3) necklace and earrings gifted by petitioner's aunt and uncle (exhibit 6II), (4) a set of six gold bangles purchased by her parents for $2000 (exhibit 6KK), (5) a pendant necklace and matching earrings gifted by petitioner's cousin (exhibit 6LL), (6) a family heirloom pearl necklace and matching earring set gifted by her parents (exhibit 6MM),

and (7) jewelry gifted by respondent for the wedding (exhibit 6OO). The trial court must then determine the jewelry's value based on the evidence presented.

¶ 28                                III. CONCLUSION

¶ 29        For the reasons stated, we vacate the judgment of the circuit court of Will County and remand for further proceedings.

¶ 30        Judgment vacated; cause remanded.