**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 230122-U

Order filed May 15, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| JUANITA RIOS, | ) | LaSalle County, Illinois, |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-23-0122 |
| and | ) | Circuit No. 18-D-185 |
| | ) | |
| JESUS RIOS, | ) | Honorable |
| | ) | Michelle A. Vescogni, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Brennan and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1       *Held*:   Trial court did not err in classifying respondent's bank account as non-marital property, in denying the petitioner's dissipation claim, or in denying petitioner's claim for maintenance.

¶ 2       Petitioner, Juanita Rios, appeals from a judgment of dissolution of marriage to Respondent, Jesus Rios, arguing the trial court erred in (1) finding Jesus's bank account to be non-marital property and awarding the funds in that account to Jesus, (2) denying Juanita's dissipation claim, and (3) failing to award Juanita maintenance. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            Jesus Rios and Juanita Rios married in 1972 and divorced in 1991. They remarried on

September 27, 2010, and Juanita filed a second petition for dissolution of marriage on June 12,

2018. No children were born of the second marriage, but the parties had four children from their

first marriage. In the first divorce, Jesus received his railroad pension (as it then existed) and the

house at 1876 N. Hennepin Street, LaSalle, while Juanita received a spouse's share of the

railroad pension (as it then existed) and the house at 2423 Rock Street, Peru.

¶ 5            Jesus worked for the railroad and retired in October of 2011, approximately 13 months

after he remarried Juanita. Jesus' name was placed on the deed of the house in Peru, where they

lived during their second marriage. Jesus paid off Juanita's existing mortgage of approximately

$41,000. In September of 2017, Juanita had Jesus removed from their residence through an order

of protection. The parties were each 70 years old at the time the second judgment of dissolution

of marriage was entered.

¶ 6            Jesus had a checking account with First Federal Savings Bank (FFSB). This was his only

individual checking account, and his railroad pension was deposited into that account. The

checking account existed prior to Jesus' remarriage to Juanita, and Jesus testified at trial that the

only funds going into the account were from his railroad pension. The FFSB account was in

Jesus's name only and no other person has ever been on the account. Jesus also testified at trial

that his wages earned during their second marriage (approximately 13 months) were deposited

into the parties' joint checking account.

¶ 7            On August 5, 2020, Juanita filed a notice of intent to claim dissipation where she alleged

the marriage began an irretrievable breakdown in 2016, that Jesus had income in excess of $4516

per month, that he had taken multiple trips to Mexico for purposes unrelated to the marriage, that

he withdrew $77,000 between August of 2017 and December of 2017, and that he withdrew $25,000 in 2019.

¶ 8        The circuit court issued its judgment for the second dissolution of marriage on March 7, 2022. On the issue of dissipation, the court found that Juanita presented insufficient evidence as to the amount and the time period of the alleged dissipation. The court further found that Juanita had no idea what Jesus did with his money, and that each party managed their own finances. The court found Jesus's FFSB account to be marital property and awarded Juanita $9986, half of the funds in the FFSB account.

¶ 9        Juanita additionally requested maintenance. However, after reviewing the statutory factors in Section 504(a) of Illinois Marriage and Dissolution of Marriage Act (the Act), the court concluded Juanita did not need maintenance because the expenses listed on her financial affidavit were either inflated or did not exist. 750 ILCS 5/504(a) (West 2022). The court also concluded the parties often did not share finances, and Juanita did not rely on Jesus's income to pay her expenses during the marriage, particularly in later years. Juanita was awarded $7000 of the approximately $12,000 she requested in attorney fees.

¶ 10        On March 30, 2022, Juanita filed a motion to reconsider, requesting that the court reconsider its ruling regarding the dissipation of marital funds and whether she was entitled to maintenance. On April 6, 2022, Jesus also filed a motion to reconsider, arguing that the source of funds of his FFSB bank account derived from his non-marital pension payments and, therefore, were his sole non-marital property. Jesus additionally argued that the award of attorney fees was contrary to the law and evidence in this matter.

¶ 11        A hearing was held on both motions to reconsider, where Juanita focused solely on her argument related to dissipation and did not address the issue of maintenance. At the hearing,

3

Jesus focused solely on his argument related to the FFSB account and did not address the issue of attorney fees.

¶ 12    On February 23, 2023, the circuit court issued its ruling on the motions to reconsider. The court affirmed its ruling regarding dissipation, finding that Juanita did not make a *prima facie* case that Jesus dissipated marital assets, stating the spouse who makes a claim of dissipation must first make a *prima facie* showing in order to shift the burden to the spouse charged with dissipating assets, citing *In re Marriage* of *Murphy,* 259 Ill. App. 3d 336, 339 (1994). On the issue of maintenance, the court stated that because (1) the issue was not argued by Juanita at the hearing, (2) the motion to reconsider said nothing more than asking the court to reconsider its ruling on the issue, and (3) the brief in support of its motion to reconsider also did not address maintenance, the court would affirm its ruling on the issue of maintenance. On the issue of the FFSB account, the court found that the funds held in the FFSB account were entirely from Jesus's non-marital pension payments awarded to him pursuant to the parties' prior judgment for dissolution of marriage. The court reversed its prior ruling, finding the FFSB account to be non-marital property and awarded all funds in the FFSB account to Jesus. Lastly, the court affirmed its ruling on attorney fees.

¶ 13    This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, Juanita argues that the trial court erred by (1) classifying the FFSB account as Jesus's non-marital property, (2) denying Juanita's dissipation claim, and (3) failing to award Juanita maintenance. We will address each issue in turn.

¶ 16                        A. FFSB Account as Jesus's Non-Marital Property

4

¶ 17     A circuit court's factual findings, including classification of property as marital or non-marital property, will not be overturned unless they are against the manifest weight of the evidence. *In re Marriage of Dhillion*, 2014 IL App (3d) 130653, ¶ 29. A decision is against the manifest weight of the evidence if it is clearly apparent the circuit court should have reached the opposite conclusion, or the decision is arbitrary, unreasonable, or not based on the evidence. *Id.*

¶ 18     The FFSB account was in Jesus's name only, no other person had ever been on the account, and it existed prior to Jesus's remarriage to Juanita. The account only held funds derived from the portion of Jesus's railroad pension awarded to Jesus in the parties' prior dissolution case. Juanita was awarded her spousal share of the pension, $2297 per month, as her sole property. Jesus's railroad pension was directly deposited into the FFSB account, and Jesus testified at trial that the only funds that went into the account were from his railroad pension. Jesus also testified that his wages earned during their second marriage (approximately 13 months before his retirement) were deposited into the parties' joint checking account. Juanita testified that she knew nothing of the sources of funds in the FFSB account.

¶ 19     "[A]ll property acquired by either spouse after the marriage and before a judgment of dissolution of marriage * * * is presumed to be marital property." 750 ILCS 5/503(b)(1) (West 2022). "The presumption of marital property is overcome by a showing that the property was acquired by a method [which would classify it as nonmarital property]." *Id*. Property acquired prior to a marriage, as well as the increase in value of such property, is non-marital property. 750 ILCS 5/503(a)(5), (7) (West 2022). Any judgment or property obtained by judgment awarded to a spouse from the other spouse is non-marital property. *Id.*

¶ 20     On appeal, Juanita argues that because Jesus earned 13 months of railroad income during their second marriage, and because Jesus's pension was partially funded by that one year of

employment, that one year of the railroad's additions to Jesus's pension converted the FFSB account into marital property.

¶ 21    As stated, Jesus was awarded his railroad pension in the 1991 divorce judgment, and the only funds to ever go into the account during his second marriage were from that pension. When non-marital pension payments were deposited into a non-marital bank account during the course of the marriage, those funds were not automatically converted from non-marital property to marital property. See 750 ILCS 5/503(a)(5), (7), (b)(1) (West 2022).

¶ 22    Juanita additionally argues that because Jesus received pension benefits for 10 years during the second marriage, and because those funds were deposited into the FFSB account, the funds were impermissibly comingled with funds from prior to his second marriage so that all funds in the account were transformed from non-marital funds to marital funds. However, there is no evidence in the record to support this claim. Juanita testified that she knew nothing of the sources of funds in the FFSB account, and Jesus testified that his wages earned during their second marriage were deposited into their joint checking account. The funds in the FFSB account came from Jesus's premarital property and the account was only ever funded by Jesus's portion of the railroad pension awarded to him in the parties' first divorce. As such, we find that the circuit court's finding that the funds in the FFSB account were Jesus's non-marital property was not against the manifest weight of the evidence. See *In re Marriage* of *Murphy,* 259 Ill. App. 3d 336, 339 (1994).

¶ 23                                    B. Dissipation

¶ 24    Our supreme court has defined dissipation as the "use of *marital property* for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown." (Emphasis added.) *In re Marriage of O'Neill,* 138 Ill.

2d 487, 497 (1990). "The issue of dissipation is generally a fact-intensive inquiry that calls upon the trial court to make a credibility determination as to the explanation given by the spouse charged with dissipation as to how the funds were used." *In re Marriage of Dhillon*, 2014 IL App (3d) 130653, ¶ 36. A trial court's ruling on dissipation, therefore, will not be reversed on appeal unless it is against the manifest weight of the evidence. *Id*.

¶ 25 Given that dissipation requires the use of *marital funds* and that we upheld the trial court's determination that the funds in Jesus' FFSB account were non-marital property, dissipation could not have occurred, and the trial court's finding that there was not dissipation was not against the manifest weight of the evidence.

¶ 26 C. Maintenance

¶ 27 "A trial court's determination of maintenance will not be altered absent an abuse of discretion or finding that the award is against the manifest weight of the evidence." *In re Marriage of Blume*, 2016 IL (3d) 140276, ¶ 51. An abuse of discretion occurs where the trial court acts arbitrarily, fancifully, unreasonably, or where no reasonable person would take the view adopted by the trial court. *Blum v. Koster*, 235 Ill.2d 21, 35 (2009). We may affirm the court's judgment on any basis contained in the record. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24 (citing *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 16).

¶ 28 Juanita argues that the circuit court failed to consider her income and expenses in determining how much money she needed to live each month. She also argues that the court failed to consider all section 504(a) factors and instead chose to focus on her need. Juanita argues that if the other factors had been considered, an award of maintenance would have been warranted.

7

¶ 29    We address Juanita's first contention that the circuit court failed to determine "what Juanita's income and expenses actually were and compare the same with Jesus Rios'[s] income and expenses, and at least determine a non-binding guideline amount." The record does not support Juanita's contention. Although the trial court did not include exact figures in its judgment, it did compare Juanita's income and expenses with the income and expenses of Jesus.

¶ 30    Most of the evidence presented had to do with the finances of the parties, with great detail provided on the income, expenses, debt, and assets of the parties. The court questioned Juanita at length about her financial affidavit and learned that Juanita listed her gross monthly income as $2297.49, when in fact it was closer to $2735 (approximately $2297 per month from railroad retirement and another $438 from IVCH pension), and that Juanita drastically overstated her expenses, stating that her expenses were $3540.53 plus $565 for payment of monthly debt, when in reality her monthly expenses appeared closer to $1000 per month. It was discussed that given that the months in question were during the COVID-19 pandemic, expenses could have been lower than usual. The court learned that Jesus had a monthly income of approximately $4561 and expenses of $2678, although Jesus's annual income did appear higher than what he received from his pension and Social Security on years when he liquidated investments. Both parties owned their homes and cars free and clear of debt. At the time of the trial, Juanita had assets of around $60,000 and $12,000 in credit card debt. The trial court was well aware of the facts above and asked many questions related to the parties' finances. We find that the record clearly establishes that trial court considered the parties' income and expenses and determined need accordingly.

¶ 31    Next, we consider Juanita's second argument regarding maintenance: that the court failed to consider all section 504(a) factors, and instead chose to focus on Juanita's need. Section

504(a) of the Act covers entitlement to maintenance and how courts determine whether an award of maintenance is appropriate. In making this determination, courts shall consider all relevant factors, including:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the dissolution of marriage;

(2) the needs of each party;

(3) the realistic present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;

(5) any impairment of the realistic present or future earning capacity of the party against whom maintenance is sought;

(6) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment;

(6.1) the effect of any parental responsibility arrangements and its effect on a party's ability to seek or maintain employment;

(7) the standard of living established during the marriage;

(8) the duration of the marriage;

(9) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and the needs of each of the parties;

(10) all sources of public and private income including, without limitation, disability and retirement income;

(11) the tax consequences to each party;

(12) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(13) any valid agreement of the parties; and

(14) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 2022).

¶ 32    The trial court did not include a written analysis of each individual section 504(a) factor in its judgment, but it specifically stated that "an award of maintenance is appropriate after consideration of all relevant factors." The judgment then lists the section 504(a) factors and continues, stating the following:

¶ 33    "The Court, *having considered all relevant statutory factors*, finds that an award of maintenance to Juanita is not appropriate, as she has sufficient income to meet her needs. The Court further finds that many [of] the expenses listed in her Financial Affidavit were either inflated or did not exist. After removing those expenses, she has sufficient income to meet her needs. Additionally, the evidence adduced at trial is that the parties did not often share finances; Juanita's money was generally hers, and Jesus' money was generally his. Juanita did not present evidence that she relied on Jesus' income to pay her expenses during the marriage, particularly in the latter years of the marriage. Accordingly, Juanita shall be barred from receiving maintenance from Jesus, now or anytime in the future." (Emphasis added.)

10

¶ 34    The trial court heard testimony on the length of the marriage, was aware of the age of the parties, and heard many details of the parties' income, expenses, debts and assets. The trial court was well able to evaluate the section 504(a) factors, including realistic earning capacity, retraining, and the length of the marriage, in determining whether to award maintenance. Although the trial court did not individually list or provide a detailed analysis of each of section 504(a) factor, it was not required to do so. In deciding whether to award maintenance, the court must consider all relevant statutory factors, but it need not make explicit findings as to those factors. *In re Marriage of Virdi*, 2014 IL App (3d) 130561, ¶ 28 (citing *In re Marriage of Reynard*, 378 Ill. App. 3d 997 (2008)). " '[W]hen the basis for an award of maintenance is established in the record, it is not mandatory that the trial court make explicit findings for each of the statutory factors.' " *Shen*, 2015 IL App (1st) 130733, ¶ 135 (quoting *Blum v. Koster*, 235 Ill. 2d 21, 38 (2009)).

¶ 35    We reject Juanita's argument that the trial court did not consider all the statutory factors solely because its order did not list them or discuss them individually. *Id.* ¶ 136. The trial court in its judgment twice stated it considered all the section 504(a) factors and then provided additional reasons for determining that Juanita did not need maintenance. Simply because the court chose to focus on Juanita's need did not mean the court did not consider the other factors. Therefore, we cannot find the trial court's decision not to award Juanita maintenance was arbitrary or unsupported by the evidence presented by the parties, and, as such, was not an abuse of discretion.

¶ 36                                    III. CONCLUSION

¶ 37    The judgment of the circuit court of LaSalle County is affirmed.

¶ 38    Affirmed.

11